## Case No. 16,134.

### UNITED STATES v. REED.

[2 Blatchf. 435;[1] 15 Law Rep. 428.]

Circuit Court, N. D. New York. Oct., 1852.

FEDERAL GRAND JURIES — SELECTION AND QUALIFICATIONS—STATE LAWS—CHALLENGES TO ARRAY—VENIRE—DISCRETION OF COURT—EVIDENCE BEFORE GRAND JURY—WITNESSES—OATH—FUGITIVE SLAVE LAW.

1. The judiciary act of September 24th, 1789 (1 Stat. 88, § 29), the act of May 13th, 1800 (2 Stat. 82), and the act of July 20th, 1840 (5 Stat. 394), adopt the state regulations respecting the procurement of grand and petit jurors to serve in the federal courts, and apply to those courts the state regulations respecting the qualifications and the exemptions of grand and petit jurors.

[Approved in U. S. v. Tallman, Case No. 16,-429. Cited, contra, in U. S. v. Williams, Id. 16,716; U. S. v. Coppersmith, 4 Fed. 199; Brewer v. Jacobs, 22 Fed. 234.]

2. A challenge to a grand juror for favor, on the ground that he is the prosecutor or complainant upon a charge, or that he is a witness on the part of the prosecution, and has been subpoenaed or been bound in a recognizance as such, goes to the qualifications of the juror.

3. A challenge to the array of the grand jury in a given case, on the ground that they have been selected, summoned and returned by a person unfit to summon an indifferent jury in the case, touches the qualifications of the panel.

4. Therefore, state regulations respecting such challenges are applicable in the federal courts.

[Cited in U. S. v. Coppersmith, 4 Fed. 199; Approved in U. S. v. Tallman, Case No. 16,429.]

5. But peremptory challenges in criminal cases in the federal courts are regulated by the common law.

6. The absence of a venire for the summoning of a grand jury, in a case where it is required, is a ground of challenge to the array.

[Approved in U. S. v. Tallman, Case No. 16,-429; U. S. v. Antz, 16 Fed. 123; U. S. v. Richardson, 28 Fed. 69.]

7. Challenges to the array of grand jurors are abolished by the laws of New-York, and are consequently also abolished in the federal courts in New-York.

[Cited in U. S. v. Tuska, Case No. 16,550.]

8. But still, where there has been any improper conduct on the part of the officers employed in designating, summoning and returning the grand jury, an accused person who is prejudiced thereby has his remedy by motion to the court for relief.

9. All objections, however, to the proceedings in the selection and summoning of grand jurors, over and beyond the right of challenge, are presented to the court for the exercise of its sound discretion, and, although there may be

technical irregularities, it will not interpose, unless satisfied that the accused party is prejudiced by them.

[Approved in U. S. v. Tallman, Case No. 16,-429; U. S. v. Terry, 39 Fed. 356.]

[Cited in People v. Lauder, 82 Mich. 135, 46 N. W. 964.]

10. Under the act of August 8th, 1846 (9 Stat. 73, § 3), providing that no grand jury shall be summoned in the federal courts except upon an order for a venire, to be made by a judge, a venire should be issued by the clerk of the court, in pursuance of the order.

11. A verbal order given by a judge to the clerk in such case is sufficient, though no order be filed or entered of record.

12. The omission to issue a venire in such case, if a ground of challenge to the array, and if taken advantage of at the proper time, is fatal to the pannel.

13. But, if not a ground of challenge, or if the time for making the challenge be passed, it is only a ground for a motion to set aside the pannel for cause.

14. The mere omission, however, to issue the venire, is not such cause, where the application is addressed to the sound discretion of the court.

15. By the law of New-York (2 Rev. St. p. 724, §§ 27. 28), persons "held to answer," that is, arrested and held to bail to appear at the term of the court at which the grand jury attends, to answer such complaints as may be presented against them, are the only persons who can challenge either the array of grand jurors, or the individual grand jurors for favor.

16. Where a party appeals to the sound discretion of the court to set aside an indictment for irregularities in drawing or summoning the grand jury, he must implicate the good faith of the officers concerned in discharging those duties.

17. Those officers, in New-York, are bound to use the state boxes and the state ballots in drawing grand jurors, as the same are furnished to them by the state officers, and have no right to change or alter either.

18. It is the uniform practice, in the federal and state courts, for the clerk and assistant of the district attorney to attend the grand jury and assist in investigating the accusations presented before them. That practice must be regarded as settled; but any abuse or improper conduct on the part of any person admitted to the grand jury, will be investigated by the court.

[Cited in State v. Baker, 33 W. Va. 322, 10 S. E. 640.]

19. The court has no power to inquire into the mode in which the examination of witnesses was conducted before the grand jury, for the purpose of invalidating an indictment.

20. It will inquire, however, into the manner of swearing the witnesses, when they are sworn in open court, and into the competency of the evidence, whether oral or documentary, and into the manner of authenticating the latter species of evidence.

21. Where witnesses before a grand jury are testifying in regard to facts about which they have previously made ex parte affidavits, it is not improper for them to consult those affidavits, to refresh their recollection; nor is there any objection to their swearing that certain facts, of which they have previously made statements on paper, are true.

22. Evidence before a grand jury must be competent legal evidence, such as is legitimate and proper before a petit jury.

---

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

23. On a criminal charge against several persons, for a participation in the rescue of a person from the hands of a public officer who held him in custody, the witnesses who were to testify before the grand jury were sworn in open court in the following manner: The clerk of the court was furnished with a general description of the persons accused—"The United States v. M. S. and Others"—and then administered to the witnesses this oath: "You, and each of you, do severally solemnly swear, that the evidence you shall give to the grand inquest touching charges against M. S., and others, concerning which you shall be interrogated, shall be the truth, the whole truth, and nothing but the truth. So help you God." Upon the testimony given under this oath, twenty-four bills of indictment were found against twenty-four different persons, one against each. No indictment was found against "M. S. and others," nor was any indictment found against any two persons jointly. On a motion by E. R., the defendant in one of the indictments, to quash it, on the ground that the oath was void as to him: Held, that the oath was free from objection.

24. A general oath to give evidence touching criminal charges to be laid before the grand jury, without reference to any particular person, is unobjectionable.

25. If the oath embraces one or more persons by name, whose cases are about to be laid before the grand jury, and in respect to which the oath is administered, and nothing more, evidence cannot be given under it in support of any accusation against others.

26. The court has no power to revise the judgment of a grand jury upon the evidence, for the purpose of determining whether or not the finding was founded upon sufficient proof, or whether there was a deficiency in respect to any part of the complaint.

[Cited in U. S. v. Terry, 39 Fed. 357.]

[Cited in brief in Com. v. Bannon, 97 Mass. 218.]

27. When, under section 6 of the act of September 18th, 1850 (9 Stat. 463), known as the "Fugitive Slave Act," a warrant is issued by competent authority, that is sufficient to justify the arrest and detention of the fugitive until he is discharged by due course of law, and any person concerned in rescuing or attempting to rescue such fugitive out of the custody of the law, subjects himself to the penalties of the act.

This was a motion to quash an indictment found in the district court at Buffalo, in November, 1851, and transmitted to this court. The indictment was founded upon the 7th section of the act of congress of September 18th, 1850 (9 Stat. 464), commonly called the "Fugitive Slave Act," and the alleged offence consisted in rescuing from the custody of the United States marshal, at Syracuse, Jerry, a person lawfully in his custody under that act, as a fugitive from service or labor. The indictment contained two classes of counts—one averring that the person rescued was held to service or labor in the state of Missouri, and was a fugitive from such service, and, as such in the lawful custody of the marshal when the rescue took place—and the other averring that the person rescued was an alleged fugitive from service or labor, and was, at the time of the rescue, in the custody of the marshal, under a warrant duly issued by a United States commissioner under said act, he having ju-

risdiction of the case, and proceedings being in progress before him under said warrant, to determine whether the person rescued was such fugitive or not. The motion was founded upon affidavits, and affidavits were read in opposition. The defendant [Enoch Reed] had not pleaded, but was now brought into court for the first time, and arraigned, nor had he been arrested, or held to answer in any way, before the indictment was found.

David D. Hillis, for defendant, stated two general grounds for the motion: (1) Irregularities in obtaining the grand jury by which the indictment was found. (2) Irregularities in the proceedings by and before the grand jury, after they were empanneled. Under the first point he was proceeding to urge: (1) that there were irregularities on the part of the deputy marshal at Buffalo, in drawing the grand jury; (2) that one of the grand jurors was a volunteer, not having been summoned by the deputy marshal; (3) that no order was made by the district judge for a venire to summon the grand jury, as required by the 3d section of the act of congress of August 8th, 1846 (9 Stat. 73); (4) that no venire or precept was issued by the clerk of the court to the marshal, authorizing him to summon the grand jury.

Before NELSON, Circuit Justice, and HALL, District Judge.

NELSON, Circuit Justice. A preliminary question suggests itself in this case, whether the provisions of the Revised Statutes of New York (2 Rev. St. p. 724, §§ 27, 28), prescribing the objections that may be taken to the organization of grand juries, are not binding on this court, and whether, under those provisions, we are not precluded from looking into the objections which are raised. The act of congress of July 20th, 1840 (5 Stat. 394), is the act now in force regulating the drawing and impanelling of grand and petit juries in the federal courts. That act adopts the state regulations, not only those existing when the act was passed, but any changes that might be thereafter made by the state in the mode of selecting and impanelling juries. That act also authorizes the federal courts to adopt the state regulations by rule, so far as it may be practicable to do so. And a rule (46) has been made by the district court for this district, under that act, adopting the regulations of the Revised Statutes, as respects the organization of grand and petit juries. The state law regulates the length of notice required for drawing grand jurors, the notice necessary in summoning them, their qualifications, and the numbers necessary to constitute a quorum for business, and to find a bill. For regulations as to these matters in the federal courts, we must look into the Revised Statutes. There, also, we find that the legislature has limited the objections that may be taken to grand jurors, either to the array,

or to any particular member. We desire the counsel to turn his attention to the point suggested, because, if we take the Revised Statutes as a guide in determining what objections may be looked into, the necessity of examining those now raised may be superseded. It is, therefore, proper to inquire whether we can go behind the indictment, and entertain objections to the organization of the grand jury beyond those which are prescribed by the state regulations.

Mr. Hillis read the sections of the Revised Statutes referred to (2 Rev. St. p. 724, §§ 27, 28):

"Sec. 27. A person held to answer to any criminal charge may object to the competency of any one summoned to serve as a grand juror, before he is sworn, on the ground that he is the prosecutor or complainant upon any charge against such person, or that he is a witness on the part of the prosecution, and has been subpœnaed or been bound in a recognizance as such; and, if such objection be established, the person so summoned shall be set aside.

"Sec. 28. No challenge to the array of grand jurors, or to any person summoned to serve as a grand juror, shall be allowed in any other cases than such as are specified in the last section."

By the law of New-York, certain preliminary notices are necessary in getting together a grand jury. Can these notices be entirely dispensed with, and a mere voluntary body come together as a grand jury, and yet no objection be afterwards made by a party indicted by such body? Suppose the case of a grand jury not drawn at all, but admitted to have been packed. Can a man indicted by it be cut off, by the provisions of the Revised Statutes, from raising the objection?

In the present case, a man served on the grand jury who was not summoned, and there was no order made by the district judge for a venire, and no venire issued to the marshal to summon the jury. The defendant had no notice of these irregularities before he was indicted. He was not bound over before indictment, and he now appears in court for the first time, and is arraigned. Is it a sufficient answer to his objections to say that he might have objected to any individual grand juror on the ground that he was a witness or prosecutor, and that, not having been present to challenge for those prescribed causes, he cannot now object for any others? If we are bound by the statute, a jury might be packed, because that is no ground of challenge under the statute; or half of the jury might be volunteers, instead of the jury being, as Chief Justice Marshall, in Burr's Case [Case No. 14,693], said it must be, the jury summoned; or less than the legal number of jurors might be impanelled. (NELSON, Circuit Justice. How far the Revised Statutes go upon the point

of precluding objections other than those specified in the statute itself, is a question we desire to hear discussed. Are we tied down to the irregularities specified, or can we go into others?) A grand jury may have been drawn by a constable, or it may be confessedly corrupt. Are all these objections cut off by the statute of New York?

No case can be found in which a court has refused to look into the conduct of its own officers in drawing, summoning and impanelling a grand jury. People v. Hulbut, 4 Denio, 133, 136; 6 Car. & P. 90; People v. Jewett, 3 Wend. 314; and 6 Wend. 386; U. S. v. Coolidge [Case No. 14,858]; People v. McKay, 18 Johns. 212. The cases cited are authorities to show that a court will thus inquire when irregularities are brought to its notice.

The language of the Revised Statutes does not confine the party to the objections specified. It would be absurd for it to do so, where gross irregularities are perpetrated, and when, as here, a citizen applies for redress at the first opportunity.

It was decided by Chief Justice Marshall, in U. S. v. Hill [Case No. 15,364], in 1809, that neither the 29th section of the judiciary act of 1789 (1 Stat. 88), nor the act of May 13th, 1800 (2 Stat. 82), applied to grand juries in the federal courts. These acts prescribed the mode of procuring juries in all cases. They were amended by the act of July 20th, 1840, referred to, which speaks of "jurors to serve," &c. The language in all three of the acts is equally general, and, as the first two were held not to apply to grand juries, the last does not.

James W. Nye, on the same side.

The objections raised here ought not to be confounded with challenges or a right to challenge. Such right existed at common law. The statute has only pointed out what shall be causes of challenge in particular cases. The 27th and 28th sections referred to, limit the right of challenge to a person who is "held to answer," one recognised to appear at a given time and place, to answer any charge that may be preferred against him by a grand jury then and there to sit. If, in this case, the defendant had appeared at Buffalo, and objected to any grand juror for any cause specified in the statute, he would have been told that he had no right to be heard because he was not held to answer there. But, the want of a venire was not ever the ground for a challenge. (NELSON, Circuit Justice. It was a ground of challenge to the array.) Then, no one could take advantage of it, unless "held to answer." And the statute leaves it still the duty of the court, as it ever was, to see that all the steps taken in empanneling the grand jury were regular.

Our objection lies back of the grounds of challenge specified in the Revised Statutes. The proceedings of the grand jury were void for the want of a venire. The body which

found the indictment was no grand jury, but a tribunal unknown to our laws.

James R. Lawrence, Dist. Atty., and Joshua A. Spencer. for the United States.

The objections to the proceedings in empanneling the grand jury are merely a challenge to the array. If the statute of New-York regulates the challenge to the array in the federal courts, then all the objections fall to the ground. Because, if the challenge could not now be made directly, it cannot be made in an indirect way by a motion to quash.

Congress had power to say that these proceedings should be regulated by the state law, and the state had power to make the regulations it has made. The object of the law as to challenges was, that the proceedings should not be always open for a party to object to every little irregularity. And this is no hardship, because the trial before the traverse jury will always sufficiently protect the rights of a defendant.

It is said that the 27th section of the Revised Statutes referred to, only applies to persons brought into court on recognizance. But the 28th section applies to every person. "No challenge," that is, by any person, "shall be allowed," but for the two causes mentioned in the 27th section.

This regulation is, under the acts of congress and the rules of court made in pursuance thereof, applicable to the federal courts. Dist. Ct. Rule 46; Conk. Prac. (2d Ed.) 541; Cir. Ct. Rule 3, Id. 528.

The objections made here to the mode of designating the grand jurors, that one of them was a volunteer, that there was no order for a venire, and that there was no venire or precept, all come under the head of a challenge to the array, and are covered by the 28th section of the Revised Statutes.

Charles B. Sedgwick, in reply.

1. The act of congress of 1840 does not include regulations made by the state statute in regard to challenges, nor does the 46th rule of the district court apply to grand juries. 2. Admitting the 27th and 28th sections of the Revised Statutes to be applicable to the federal courts, they do not embrace the objections raised in this case.

Challenges both to the array and to the polls are to be taken before the swearing of the jury. A challenge to the array is made on account of favor, bias or relationship on the part of the officer who summons the jury, but never on account of any irregularity or want of process. There is a distinction between a challenge and a motion to set aside an indictment for irregularity. A challenge is to be brought before the court at a given point in the course of the proceedings, and to be then entirely disposed of. A want of process always appears by the record. A challenge does not. A want of process may be taken advantage of by error or certiorari; what is a ground of challenge cannot be. The

want of a venire is not a ground of challenge to the array. 1 Chit. Cr. Law, 533; People v. McKay, 18 Johns. 212; Nicholls v. State, 2 Southard [5 N. J. Law] 539; Chase v. State, 1 Spencer [20 N. J. Law] 218; State v. Williams, 1 Rich. Law, 188.

The state statute limits the right of challenge to narrow bounds, and if, in consequence, all irregularities which occur before the grand jury are actually sworn are cut off, there is no way of reaching some of the worst evils. It is no answer to say that the rights of a party will be protected because he will have his trial before the petit jury. This view strikes at the provision of the constitution which requires a due presentment by a grand jury before trial. Every safeguard of the liberty of the citizen should be maintained, but, according to the construction of the prosecuting attorney, no forms are of any importance, if only the defendant be fairly tried by the petit jury.

If a venire is required, it is the foundation on which the grand jury stands. If it be wanting, there is no ground for challenge, but the grand jurors have no right to act, and their proceedings are a nullity.

Under the 27th section of the Revised Statutes, a person previously held by recognizance is the only one who can make the challenges specified. If it be held that that section embraces other persons, then those others would be cut off without an opportunity of making even the objections specified. It is said that the 28th section enlarges the exclusion. But, the two sections are to be construed together. If a person not held to answer cannot challenge or obtain relief by motion, but is shut out forever, then the provision of the constitution that a person charged with crime must be regularly presented by a grand jury, is entirely brushed away.

If, however, the court should be against us on these objections to matters occurring before the empanneling of the grand jury, we still have some objections to discuss in regard to matters which arose after the impanelling of the grand jury.

NELSON, Circuit Justice. We have looked into the question which we suggested to the counsel yesterday, and to which we desired them to turn their attention, and are prepared to express our opinion upon it. The question is, perhaps, somewhat a new one, in the aspect in which it has been presented. But the general principle, that is, the adoption of the state regulations in designating, summoning and returning grand jurors, is, so far as it is involved, not new, but has always prevailed in the federal courts since their organization. The judiciary act of 1789 (1 Stat. 88, § 29), the act of May 13th, 1800 (2 Stat. 82), and the act of July 20th, 1840 (5 Stat. 394), adopt the state regulations in respect to the procurement of grand and petit jurors to serve in the federal courts, and each of those acts, especially the act of 1840, applies to the federal

courts, in express terms, the state regulations respecting the qualifications and the exemptions of grand and petit jurors.

The question in the present case is, whether or not the provisions of the state act (2 Rev. St. p. 724, §§ 27, 28), which regulate the rights of a prisoner in the challenging of grand jurors, are applicable to the organization of grand juries in the federal courts. Those provisions are as follows:

"Sec. 27. A person held to answer to any criminal charge, may object to the competency of any one summoned to serve as a grand juror, before he is sworn, on the ground that he is the prosecutor or complainant upon any charge against such person, or that he is a witness on the part of the prosecution, and has been subpœnaed or been bound in a recognizance as such; and, if such objection be established, the person so summoned shall be set aside.

"Sec. 28. No challenge to the array of grand jurors, or to any person summoned to serve as a grand juror, shall be allowed in any other cases than such as are specified in the last section."

We entertain no doubt that these two sections bear upon the question of the qualifications of grand jurors and their competency to serve as such. If this be so, it follows that the regulations prescribed by these sections come directly within the act of 1840, which, in express terms, adopts the state acts in regard to the qualifications and exemptions of grand jurors.

A challenge to an individual grand juror may be made on behalf of a prisoner, on the grounds that he has not the requisite freehold qualification, or that he is not of competent age, or that he has formed a fixed opinion of the guilt of the accused, or that he is his enemy, and various others which it is not necessary to enumerate. It is too obvious to require any argument that the challenges to an individual grand juror for favor, which are prescribed in the two sections in question, go directly to the qualifications of the juror as a fit and competent person to serve in that capacity.

The challenge to the array, at common law, or according to the English understanding and definition of that term, is founded on the allegation that the sheriff who summoned the grand jury was an improper and unfit person to discharge that duty, as by reason of his being related to one of the parties—his relationship to the prisoner being a ground of challenge on the part of the king—and it being a ground of challenge by the accused that the sheriff is his enemy, or that the relations between them are such that, in view of a proper administration of justice, the sheriff is not a proper person to summon the grand jury who are to be the triers of the accused. It being thus a ground of a challenge to the array, in a given case, that the jury have been selected, summoned and returned by a person unfit to summon an indifferent jury

to sit and judge in the case, and it being the presumption that such a person would summon a jury not indifferent, but prejudiced, as respects the case to be heard, the challenge to the array, so authorized, necessarily, though perhaps more remotely, touches and reaches the proper qualifications of the panel to sit and act in the particular case.

So that, in point of law, as well as in truth, both the challenge to the favor and the challenge to the array, directly or indirectly, in each case, go to the determination of the proper qualifications of grand jurors, either as individuals or as a panel. And, if we are right in our premises, it follows that the two sections in question are directly within the act of congress of 1840, and are applicable in regulating the selection, summoning, returning and organization of grand juries in the federal courts.[2]

Whether the fact that a venire or a precept has not been issued by the proper authority in cases where it is required by law for the purpose of summoning and returning a grand jury, is a ground of challenge to the array, may be, perhaps, an open question, or one admitting of some observation and doubt. We are inclined to think, however, that if an objection were made on that ground, at the proper time, it might be made as a challenge to the array. Because, in judgment of law, if a grand jury has been summoned and returned by a person who is not authorized to designate, summon and return the pannel, the array of the jury thus summoned and returned would seem to be objectionable as a pannel, and therefore objectionable under a challenge to the array or to the pannel. If, then, the absence of a venire or of a precept,

---

[2] The principles here laid down are not applicable to peremptory challenges in criminal cases in the courts of the United States. Such challenges in those courts are regulated by the common law. U. S. v. Marchant, 12 Wheat. [25 U. S.] 480; U. S. v. Wilson [Case No. 16,730]. The acts of congress on the subject of jurors do not regulate peremptory challenges to jurors in criminal cases. The 29th section of the judiciary act of 1789 (1 Stat. 88) enacts that "jurors in all cases to serve in the courts of the United States," "shall have the same qualifications as are requisite for jurors by the laws of the state of which they are citizens, to serve in the highest courts of law of such state;" and the act of July 20th, 1840 (5 Stat. 394), provides that "jurors to serve in the courts of the United States, in each state respectively, shall have the like qualifications and be entitled to the like exemptions as jurors of the highest court of law of such state now have and are entitled to." A peremptory challenge not being made for any assigned cause, and having no reference to the qualification or exemption of the juror, the acts of congress above referred to do not cover it. And the 34th section of the judiciary act of 1789 (1 Stat. 92), which provides that "the laws of the several states, except where the constitution, treaties or statutes of the United States shall otherwise require or provide, shall be regarded as rules of decision in trials at common law in the courts of the United States, in cases where they apply," does not apply to criminal cases. U. S. v. Reid, 12 How. [53 U. S.] 361. See U. S. v. Douglass [Case No. 14,989].

in a case where the law requires one, is a ground of challenge to the array, which we are inclined, upon principle, to think it is, the challenge is abolished by the 28th section of the statute referred to, and it is, consequently, also abolished in the federal courts.

It is very probable that the legislature of New-York were induced to abolish the challenge to the array on account of the change from the English mode in the system adopted for the purpose of designating and summoning grand jurors. In England, (and so it was in the federal courts until the act of congress was passed adopting the state regulations,) the sheriff, on receiving the venire, makes a selection of the jurors from the body of the county, at his discretion. Hence the importance that is there given to the proper qualifications of the sheriff, in respect to the parties concerned, to summon the jury; because, if he is disposed to summon one to accomplish a particular object, it is entirely within his power to do so. But, according to the system prevalent in the state of New-York, the law provides for the selection of the members of the grand jury with great care and particularity. In the first place, they are selected from the body of the county by the board of supervisors, and separate ballots containing their names are placed in a box kept by the clerk of the county, from which the requisite number are drawn by lot to form the jury, and the names so drawn are the persons to be summoned and returned. If, therefore, the law is complied with in the selection and summoning of grand jurors, none of the officers employed in the discharge of that duty can exercise any discretion whatever, and hence, no doubt, the legislature came the more readily to the conclusion that the right of challenge to the array was not of the same importance under our system as under the system that prevails in England.

We are quite free to say, however, that although the challenge to the individual members of the grand jury for favor is abolished, except in the two cases specified in sections 27 and 28 of the statute referred to, and although the challenge to the array is wholly abolished, it by no means follows that the accused has no remedy in a case where there has been any improper conduct on the part of the public officers employed in the designating, summoning and returning of the grand jury. If there has been any improper conduct on the part of those officers in performing that service, or if any fraud has been committed, through their instrumentality, in the drawing, summoning or organization of the grand jury, of course, the accused who may be prejudiced thereby has his remedy, by motion to the court for relief in consequence of such irregularity or fraud. Because, the selecting, summoning and returning of grand jurors are proceedings which are always under the general supervision and control of the court, and the court will guard them, and will see to it that no one shall be prejudiced thereby. The court has general power to preserve the pure administration of justice, and its sound discretion will always be exercised freely for the purpose of securing that end.

These objections, however, to the proceedings in the selection and summoning of grand jurors, over and beyond the right of challenge, are presented to the court for the exercise of its sound discretion. It will, therefore, look into the facts presented, on which a charge is made against the regularity of the proceedings in the selection and summoning of grand jurors in a given case, and will hear the explanations on the other side, and its judgment will be determined accordingly. If it sees that there has been improper conduct in the public officers, which has resulted prejudicially to the party accused, it is bound to set aside all the proceedings. On the contrary, although there may be technical objections to the proceedings in point of strict regularity, yet, unless the court is satisfied that they have resulted or may result to the prejudice of the party accused, it will not set them aside, because its interposition in the case will not be required on the ground of justice either to the accused or to the public.

We are inclined to think that the question, whether or not the absence of a venire, where it is required by law, forms a ground of challenge to the array, is of no practical consequence in this case; because, even if it were a ground of challenge to the array, and the party had not made the challenge, not having had notice of the facts on which it could be grounded, yet, if it could be shown that corruption or fraud had entered into the selection, summoning or returning of the grand jury, the court would hear an application for relief founded upon its power and duty to control and regulate the proceedings so as to prevent injury and oppression. The only difference between the two cases is, that where a challenge to the array is made, it is, if maintained, fatal to the pannel, and the pannel becomes invalid by operation of law; but, where the party is obliged to make a motion to set aside the pannel on the ground of improper conduct on the part of public officers, there is then no inflexible rule of law applicable to the case, but it rests in the sound discretion of the court to see that no injury results from the impropriety. The court will look, therefore, into the facts, to see whether there is any thing to satisfy their minds that the jury thus summoned is not a fit body to exercise the powers conferred upon it.

If the absence of a venire is not a ground of challenge to the array, the result is still the same. The conduct of public officers in summoning the jury, if improper, is not thereby protected, and the injured party has his remedy by motion. In either case, the appeal is to the discretion of the court.

The act of congress of 1840, in connection with the 46th rule of the district court for this district, provides for the designation, summoning and returning of grand jurors without any venire or precept of any kind. Such has been the practice in this district ever since the adoption of the 46th rule, no doubt on a sound construction of the act of 1840. That act conferred full authority on the district court to adopt the 46th rule, which simply requires a notice by the clerk, within a proper time, to the marshal, to summon the jurors. The marshal then draws and summons them according to the state regulations as far as practicable, and makes a return on the jury list, which is filed, and which furnishes all the authority necessary for impanelling the jury.

Were it not for the act of August 8th, 1846 (9 Stat. 73, § 3), no question would arise as to a venire. The act of 1846 changed the law as it then existed, but the obvious extent of that change, as designed by congress, and as appears from the face of the law, was to remove the necessity that previously existed of summoning a grand jury at every term of the circuit and district courts, with a view to diminish expenses. Therefore, the act provides that no grand jury shall be summoned for any term of a circuit or district court, unless the judge, in the exercise of his discretion, or on the application of the district attorney, shall order a venire to be issued to summon a grand jury. Now, although the purpose of that act was to get rid of the necessity for the regular attendance of a grand jury at every term, and it, therefore, devolves power on the judge to order a grand jury when necessary, yet it does provide in terms that a grand jury shall be summoned by an order for a venire, to be made by the judge. And, undoubtedly, in compliance with the terms of that act, a venire should be issued by the clerk of the court in pursuance of the order of the judge. For, although the act only says that there shall be an order for a venire, yet it implies that a venire shall issue in pursuance of the order.

In this case, a verbal order for a venire was given to the clerk. If he had fulfilled his duty he would have entered it on the records of the court. What the clerk does by the authority of the judge is done by the judge himself. It is not necessary that the judge should put an order on file, but an order, if entered by the clerk, is of the same effect as if it were entered by the judge with his own hand. Here, an order was made by the judge, and the only point of objection in the case is the omission by the clerk to issue a venire. If the omission of the venire were a ground of challenge, and the party had availed himself of it at the proper time, it would have been fatal. But, if not a ground of challenge, or if the time for making the challenge be passed, then it is only a ground for a motion to the court to set aside the pannel for cause shown. But, the mere technical omission on the part of the clerk to issue a venire is, of itself, no cause for the action of the court, where the appeal is not to the application of an unbending principle of law, but to the sound discretion of the court. The general principle is, that the omission of an officer to do his duty will not be allowed to operate to the prejudice either of an individual or of the public, unless it is shown to have operated to the prejudice of the party who complains of the omission.

It has been urged by the counsel for the prisoner, that the 27th and 28th sections of the statute referred to apply only to persons who have been arrested and held to bail to appear at the term of the court at which the grand jury attends, to answer such complaints as may be presented against them. That is true, and they are the only persons who can challenge either the array or the individual jurors for favor; because, these challenges must be made at the time the grand jurors are called and empanneled, and only those persons who are bound over to appear have the right or the opportunity to make either of these challenges. At common law, persons not bound over never had the right or the opportunity to challenge either the individual grand jurors or the array. Hence those persons could never avail themselves of any improper conduct in summoning or returning the grand jury, except by way of motion, addressed to the sound discretion of the court, to prevent any prejudice to the rights or interests of the accused.

From these views it results, that the question at this stage does not stand upon the doctrines applicable to challenges, but upon the allegation on the one side and the denial on the other, that the grand jury has been drawn, summoned and returned improperly or through fraud, and in a way that has resulted to the prejudice of the accused, and that the court is, therefore, bound, in the exercise of its sound discretion, to look into the proceedings. The question will turn on the aspect of the case as presented by the affidavits on the part of the accused and those upon the other side; and we shall be obliged to determine it upon our view, not of the technical irregularities and objections, but of the case generally, as respects justice between the individual and the public. If we shall be satisfied that there was nothing in these proceedings, although they may have been irregular, which could work to the prejudice of the accused, we cannot, in the exercise of a sound discretion, set them aside. If, however, we shall be satisfied that they have worked injustice, we shall be bound to interpose.

There are two or three questions presented by the counsel for the prisoner, which are not embraced in the view we have taken,

that the proceedings in question must be regulated by the provisions of the Revised Statutes of New York in respect to challenges. Those questions are founded on matters arising after the impanelling of the jury, and are open for observation, without regard to the application of any one of those provisions. Upon those questions we are, of course, disposed to hear any observations that counsel may desire to present, as we are also ready to hear any views they may desire to present in regard to any prejudice or injustice that has been suffered through the manner in which the jury has been designated, summoned and impanelled.

Hillis then proceeded to argue that the defendant might have been and was prejudiced by the mode of designating the grand jurors. (NELSON, Circuit Justice. The right of challenge in this case being cut off, the remedy of the party is narrowed to an appeal to the sound discretion of the court, in case any irregularities have occurred in drawing or summoning the grand jury, which may have operated to his prejudice. But the good faith of the officers concerned in discharging the duties of drawing and summoning must be implicated.) We insist that, if an officer puts himself in motion to summon a grand jury without a venire, the question of his good faith in doing so is involved. (NELSON, Circuit Justice. We have held that the question as to the venire is not open. The counsel, in order to avail himself of the ground left open, must present a case in which he implicates the good faith of the officers concerned in selecting, summoning and returning the grand jury.)

The box from which the ballots in this case were drawn, instead of having a small hole in its top for that purpose, had a sliding cover, and, when that was drawn out, the ballots were in full view of the person drawing. Nor were the ballots folded so as to render the names invisible, as required by the statute. 2 Rev. St. p. 721, § 6. These were irregularities which would almost surely work to the prejudice of the defendant, in a case where the officer drawing had any feeling in the matter. (NELSON, Circuit Justice. How can the officer be held responsible for the construction of the box and the formation of the ballots? He has no control over them. He is to take the box furnished by the state officers. He has no right to fold the ballots, or interfere with them in any way, except to draw them. He must take the state ballots. The act of congress having adopted the state box and the state ballots, and made it the duty of the officer to draw, we do not see how it can be objected that the ballots were drawn from that box and from among those ballots.)

I pass now to irregularities in the proceedings after the grand jury was sworn and empanneled.

A son of the district attorney, not sworn in any manner, was permitted to mix with the grand jury while it was in session, and to participate in the proceedings before it. Such a practice destroys the secrecy of the institution of the grand jury, which is its most important feature. No person should be permitted to be present at its sessions except the witnesses and the sworn officers of the court. (NELSON, Circuit Justice. The only point that can arise on this branch of the case is, whether the person admitted to the grand jury was guilty of any improper conduct while there, which operated unduly on the minds of the jurors. It is the uniform practice, in the federal and state courts, for the clerk and assistant of the district attorney to attend the grand jury, and assist in investigating the accusations presented before it. That has been the practice, to my knowledge, without question, ever since I have had any connection with the administration of criminal justice. In England, even the prosecutor may appear before the grand jury and aid the representative of the crown in respect to the evidence and the management of the case. We cannot, at this late day, overturn a uniform practice that has been settled for so long a time. You must assume that the attendance of the clerk of the district attorney before the grand jury, to aid in bringing out the testimony, is admissible. But, if any abuse has been committed by him, or by any other person, it is a proper subject for investigation by the court.) We charge no abuse, except the mere fact of his being present.

The next point is, as to the oath administered in open court to the witnesses who testified before the grand jury. They were sworn in this manner: "You, and each of you, do severally solemnly swear, that the evidence you shall give to the grand inquest, touching charges against Moses Summers and others, concerning which you shall be interrogated, shall be the truth, the whole truth, and nothing but the truth. So help you God." Upon the testimony given under this oath twenty-four bills of indictment were found against twenty-four different persons, one against each. No indictment was found against "Moses Summers and others," nor was any indictment found against any two persons jointly. Could any person who swore falsely against the defendant be indicted for perjury on this oath? The witnesses were not sworn at all so far as the defendant was concerned, and the indictment against him was found on testimony not on oath. Swith v. Clark, 12 How. [53 U. S.] 21; 1 Chit. Cr. Law, 322; U. S. v. Coolidge [Case No. 14,858]. The oath here was not a general oath, naming no person, and swearing the witnesses as to any matters they might be inquired of before the grand jury. But it was a particular oath, confined to a particular cause. And an indictment will be quashed unless the witnesses are regularly

sworn. 6 Car. & P. 90; State v. Roberts, 2 Dev. & B. 540; Whart. Cr. Law, 124; State v. Cain, 1 Hawks, 352; State v. Fellows, 2 Hayw. (N. C.) 340; People v. Hulbut, 4 Denio, 133.

Another objection we have to urge is, that ex parte affidavits were used before the grand jury instead of oral testimony. Those affidavits were made originally for the purpose of issuing warrants against the parties accused. On the examination of the parties after arrest, the same affidavits were again used. And they were used a third time before the grand jury, where they were read and the witnesses asked if the statements in them were correct. This was an irregularity. In an ex parte investigation as to a person not present, the witnesses should have been interrogated as to what they remembered concerning the transaction. (NELSON, Circuit Justice. Have you any authorities that go to permit an inquiry into the mode of proceeding before the grand jury in the taking of testimony, or into the weight or sufficiency of the testimony, for the purpose of invalidating an indictment? As regards the manner of swearing the witnesses, when they are sworn in open court, and the competency of the evidence, whether oral or documentary, and the manner of the authentication of the latter species of evidence, we can inquire. But, so far as regards the mode of conducting the examination of witnesses who are properly before the grand jury, we are aware of no principle which authorizes us to revise the proceedings of the grand jury. Now, the affidavits in question here were, as we understand it, used before the grand jury in the course of the examination of the witnesses themselves who made the affidavits. The witnesses were called to testify in regard to facts about which they had previously made affidavits. The affidavits were used to refresh their recollections and to save time. The witnesses, being present before the grand jury, were to be examined according to the discretion of that body, over which we have no control. It is no new practice for witnesses to consult, for the purpose of refreshing their recollections, statements which they have previously made, although they cannot swear from the statements. There is no objection, however, to the witnesses swearing that certain facts, of which they have previously made statements on paper, are true.)

Again. An ex parte affidavit, purporting to have been taken in Missouri, and to have been made by the alleged owner of Jerry, was the only evidence before the grand jury that Jerry was a slave, that he owed his alleged owner service, that he escaped from Missouri to New York, and that the person rescued was the identical Jerry who escaped. (NELSON, Circuit Justice. Evidence before a grand jury must be competent legal evidence, such as is legitimate and proper before a petit jury. Lawrence.) The affidavit of the owner referred to was annexed to the warrant, and was the same affidavit that was used before the United States commissioner, and on which he issued his warrant in the case. It was produced before the grand jury by the commissioner himself, who was sworn as to the issuing of the warrant upon it, and the only object for which it was used before the grand jury was to show what the commissioner who issued the warrant had before him, with a view of showing that he had jurisdiction to issue it, and that it was valid in the hands of the officer, and that the rescue was in violation of the act. (NELSON, Circuit Justice. Can a motion to quash an indictment be made on the ground that the grand jury found it on insufficient evidence, or even without any evidence as to any particular point? Can you produce any authority for setting aside an indictment on that ground?) In Low's Case, 4 Greenl. 439, the affidavit of a grand juror was received to show that an indictment was found by less than twelve of the jury. In U. S. v. Coolidge [supra], an indictment was set aside on the ground that it was found on the evidence of witnesses who had not been sworn at all. (NELSON, Circuit Justice. In this last case, the inquiry was in regard to a fact that transpired, not before the grand jury, but in open court. HALL, District Judge. The affidavit of the party here, as to the alleged defect in the evidence before the grand jury, is merely on information and belief. If objection be made by the defendant, no affidavit of a grand juror, or of the district attorney, or of any person who was present before the grand jury, can be used to rebut it. If, in such a case, an affidavit on information and belief be held sufficient, every indictment must be quashed. I am aware of no case where any court has ever re-examined the evidence before a grand jury, to see whether it was sufficient. The result of such a practice would be, that in every case the court would be obliged to try a party on affidavits, on a motion to quash the indictment.) Affidavits of grand jurors are always admitted to sustain an indictment. Besides, in this case, the affidavits on the other side admit our allegation, as to the defect of evidence, to be true, by not denying it. (HALL, District Judge. Can you show, by authority, that the affidavit of a grand juror is competent for the purpose of showing that sufficient evidence was given to find the indictment? The position that your allegation is admitted because it is not denied, begs the question, which is, whether your affidavit is sufficient to call for either an admission or denial. You can have no legal information as to the fact that there was no evidence before the grand jury. The indictment itself is evidence that it was founded upon sufficient testimony, while you are speaking, upon information and belief and mere hearsay, on a subject as to which you can have legally no information. And this, you maintain, shall control an indictment

presented by a grand jury upon oath.) The doctrine suggested would go so far, if carried out, as to allow no remedy, even if it appeared that there was no proof at all before the grand jury on which to find an indictment.

Mr. Spencer, for the United States.

All the questions raised by the defendant have been disposed of except three. (1) As to the oath administered to the witnesses. (2) As to the affidavits used before the grand jury. (3) As to the want of sufficient evidence on which to find the indictment.

1. As to the oath, the argument for the defendant has proceeded on the assumption that a suit was pending between the government and the defendant, at the time the oath was administered. This is a mistake. The proceedings were merely initiatory. It was wholly unknown who would be implicated in the transaction.

The oath was equivalent to a general oath, which is sufficient. Ward v. State, 2 Mo. 120. It required the witness to speak the truth as to any matter about which he should be interrogated before the grand jury. The oath related to the matter, and it was not necessary it should be limited to any particular individual.

It is objected that separate bills were found against the several parties implicated. The transaction was a misdemeanor, in which all were principals, and all jointly and severally liable for everything that was done while they were acting in concert. Whether the indictments would be joint or several was unknown, and was a matter within the election of the district attorney, and could make no difference in the deliberations of the grand jury.

The investigation was as to one entire transaction, a simple proceeding, and the oath was, to give evidence as to any matter about which the witness should be interrogated, in relation to that transaction, respecting Moses Summers and all others who might have been engaged in it.

It is said that perjury could not be predicated on this oath. This is not so. It would sustain a count that false evidence was given against the party who complains. The witnesses were bound to speak the truth in regard to each and all of the persons concerning whom they should be interrogated.

The oath administered was the only one which could have met the exigency of the case. It cannot be that the grand jury are to suspend their proceedings, and that a witness is to stop in his testimony, every time a new name is introduced, in order that the witness may be sworn as to that particular individual.

2. As to the use of affidavits before the grand jury. Each affidavit became common law evidence the moment the witness said that the statement to which his name was signed was true. The affidavit was not read to the grand jury as an affidavit. But it was read to the witness, and, when he said it was true, the evidence was the same, in legal effect, as if given orally. It was only a brief way of examining the witness.

3. The last point is not open for inquiry. The question whether there was sufficient evidence before the grand jury on which to find the bill, is a field into which the court will not enter. It is a startling proposition, that a court is to be allowed in every case to inquire whether, on the whole, the grand jury were warranted in finding a bill.

The question here is not whether the bill was found without any evidence, but whether it was found on sufficient evidence. The indictment, presented on oath, and a matter of record, is conclusive evidence that it was found on sufficient testimony. It is only before the traverse jury that the evidence can be gone into again. When the grand jury admits improper evidence and abuses its trust, the court sometimes interferes. But the door is not open to inquire whether there was sufficient evidence on which to find the bill.

In Low's Case, 4 Greenl. 439, where the bill was found by less than twelve of the grand jury, it had no jurisdiction, and consequently the indictment was no indictment.

But, the allegation that the evidence was not sufficient is made only on information and belief. Can the court inquire into the matter on the mere suggestion of the party? What, in such case, becomes of the presumption that every public officer discharges his duty? We are under no obligation to speak in answer to such an allegation. The law does not presume that we have the means of speaking.

But the indictment contains two sets of counts—one set founded on the allegation that Jerry was a fugitive—the other on the allegation that he was an alleged fugitive, and that proceedings were in progress to determine the fact. There is no pretence that the evidence was not sufficient to support the latter class. Rosc. Cr. Ev. 233; Whart. Cr. Law, 133; Respublica v. Cleaver, 4 Yeates, 69; State v. Baldwin, 1 Dev. & B. 198; State v. Mathis, 3 Pike, 84.

Mr. Sedgwick, in reply.

There is a distinction between the oath here and a general oath. In an indictment for perjury, the oath must be stated exactly as it was administered; and, under the oath here, if an attempt were made to prove that the witness swore falsely in a proceeding against the defendant, the variance would be fatal.

There was here no joint indictment, and the oath was taken in a case in which no indictment was found, and no oath was taken in the case against the defendant. The oath was not equivalent to a general oath.

As to the admission of incompetent evidence. The accused has no access to the grand jury room, to obtain proof. He cannot compel, nor will the court permit, the grand jurors to disclose what took place before

them. Nor can he compel the district attorney or his clerk to give their affidavits as to what transpired in the grand jury room. The only way, then, that a party can know of an irregularity is by information and belief, and all that is left to him is to make a suggestion to the court. If, then, incompetent testimony vitiates an indictment, and if the only mode of reaching the question is by a motion to quash, and if the affidavit of the party on information and belief is the only foundation that can be had for the motion, then, such an affidavit requires an answer from the district attorney, who can call on the grand jurors to give evidence in reply, and can give it himself.

No witness was produced before the grand jury as to the ownership or escape of the slave. The only evidence on those points was by affidavit. The case was not one of insufficient evidence, but of a want of evidence as to vital points.

NELSON, Circuit Justice. Several of the questions raised on this motion on behalf of the defendant to quash the indictment, having been already disposed of in the course of the argument, we shall only refer to those remaining and which are deemed worthy of notice.

The first is in respect to the oath administered to the witnesses who were sent before the grand jury. They were sworn in open court, on a criminal charge against several persons for a participation in the rescue of a person from the hands of a public officer who held him in custody, and in the following manner: The clerk of the court was furnished with a general description of the persons accused,—"The United States v. Moses Summers and Others,"—and then administered to the witnesses, in due form, an oath, as follows: "You, and each of you, do severally solemnly swear, that the evidence you shall give to the grand inquest, touching charges against Moses Summers and others, concerning which you shall be interrogated, shall be the truth, the whole truth and nothing but the truth. So help you God." The argument is, that this oath was void, as it respected all persons accused before the grand jury, or, at least, as it respected all except the one particularly named; and that the evidence, therefore, given before that body, and upon which the indictment was founded, was not delivered under the sanction of an oath.

It was admitted on the argument, and we suppose there can be no doubt as to the correctness of the position, that a general oath to give evidence touching criminal charges to be laid before the grand jury, without reference to any particular person, would be unobjectionable. This seems to be the practice adopted in some of the state courts. But it is supposed that the description attempted to be given of the persons accused, in the instance before us, and to which the oath refers, vitiates it.

It is true, if this description had embraced one or more persons by name, whose cases were about to be laid before the grand jury, and in respect to which the oath was administered, and nothing more, the objection would have been well founded, so far as concerned evidence given in support of any accusation against others. It must then have been confined to complaints against the persons specified. But, in the case before us, the oath was not restricted to any specified number of persons mentioned, or to the single person named. The witnesses were sworn to give evidence touching charges against him and any other persons concerning whom they should be interrogated by the grand jury. And, if a general oath to give evidence touching charges against any and all persons concerning whom they might be thus interrogated, would be unexceptionable, of which we think there can be no doubt, it would seem difficult to maintain the objection made to the oath in this instance. It is no more general and unrestricted, as it respects the persons against whom complaints may be made before the grand inquest, in the one case than in the other, but applies to every complaint presented for examination.

There are no authorities to be found in the English books upon this question; as the mode of proceeding before the grand jury in England, in finding bills of indictment, differs from the practice usually adopted in this country. There, the indictment is drawn by the proper officers before the case is presented for examination, and the witnesses are sworn in the particular case. Here, the initiation of the proceedings is by swearing the witnesses and sending them before the grand jury, and the bill is drawn after they have agreed upon it. There is no cause pending in court, or even before the grand jury, in the legal sense of the term, at the time the witnesses are sworn, and, in consequence, no title to the proceedings can properly be given, or be necessary to the validity of the oath. If the person to be accused before the grand jury is named, it is simply for the purpose of giving application to the oath, or to the evidence under it; and, as we have seen, this application has been regarded as sufficiently direct and explicit when the oath is administered generally, and as relating to all persons concerning whom charges are to be made before that body.

Indeed, if the description of the case given to the clerk could be properly regarded as a title to the proceedings, in a technical sense, there might be some difficulty in maintaining the validity of the oath to these witnesses, as no such proceeding was then pending, in contemplation of law. An affidavit taken in a suit in which the title is given, is invalid if no such suit is pending. But, we do not regard the memorandum given to the clerk, as already referred to, in this case or in any other, even where the accused are all specially named when the oath is administered,

as a title, within the technical meaning of that term, but, as used simply for the purpose of giving application to the oath and to the evidence to be given thereafter under it. And, as the oath may be general as it respects all persons who may be accused, it would seem to follow, necessarily, that the form in which it was administered in this case is not liable to any well-founded objection.

Another ground taken in support of the motion to quash the indictment is, that there was no evidence laid before the grand jury tending to prove that Jerry was a person held to service in the state of Missouri, or that he was a fugitive from such service, at the time of his arrest and detention by the officer, or when the rescue took place, and that for this cause the indictment is founded on insufficient evidence, and, as it respects this fact, in the absence of evidence.

The indictment contains two classes of counts, one embracing an averment of these facts, and the other omitting this averment, and resting the counts upon a statement of facts showing that the magistrate had jurisdiction of the case, the issuing of the warrant, the arrest, &c.

The affidavit upon which this ground for sustaining the motion is founded, charges the absence of this evidence before the grand jury upon information and belief only—a charge, as is obvious, that may be readily made by the accused in any case where an indictment has been found, and which, if maintainable on such an allegation, might devolve upon the public prosecutor and the courts, in all cases, the necessity of going into the evidence before the grand jury, for the purpose of re-examining and revising the adjudication of that body; and this, without any authentic record of the evidence produced before them, or any means of arriving at that evidence. They are not bound to keep a record of the evidence taken before them, and are prohibited from disclosing their proceedings, and so, also, are all other persons who have access to or are permitted to participate in those proceedings. They are allowed by statute in some of the states to testify whether the evidence of a witness examined before them is consistent with or different from the evidence given by him before the court, and also upon a complaint for perjury, or upon a trial for that offence, to disclose the testimony given by any such witness; and, perhaps, evidence in these cases might be given by them at common law and without the aid of the statute. It is even doubtful whether they will be allowed to disclose the fact that a bill of indictment was found by a less number than twelve of their body, the authorities being contradictory. Rex v. Marsh, 6 Adol. & E. 236; Low's Case, 4 Greenl. 439; Rosc. Cr. Ev. 192; People v. Hulbut, 4 Denio, 133; Reg. v. Cooke, 8 Car. & P. 582; People v. Jewett, 3 Wend. 314; Whart. Cr. Law, 129. The rule is founded upon public policy, to guard against abuses that might arise from a disclosure of their proceedings to the accused, and to protect witnesses who may have given evidence before them, from being exposed to the ill-will and resentment of parties indicted. The permission to disclose in the case of a complaint for perjury, or for the purpose of contradicting a witness, seems to remove every well-grounded objection to the rule.

No case has been cited, nor have we been able to find any, furnishing an authority for looking into and revising the judgment of the grand jury upon the evidence, for the purpose of determining whether or not the finding was founded upon sufficient proof, or whether there was a deficiency in respect to any part of the complaint; and the grounds and reasons which we have briefly alluded to, account sufficiently for the absence of any such precedent.

The unfitness and inconvenience of an inquiry into the evidence before the grand jury, in this ex parte and informal manner, afford, also, strong grounds of objection to any such practice. The re-examination and revision of the evidence before them, attempted to be established by ex parte statements, and upon the allegation of information and belief by interested parties, would necessarily lead to abuses in the administration of criminal justice, besides involving it in endless and profitless litigation. It pre-supposes improper, if not dishonest conduct, in the members constituting the body, and seeks to establish fact in this loose and imperfect mode of arriving at the truth, and under circumstances in which the jurors themselves are precluded from vindicating their proceedings. For, it was well remarked by the learned judge who delivered the opinion of the court in the case of People v. Hulbut, 4 Denio, 133, upon this subject, that "the evidence which the defendant proposed to give could amount to nothing less than an impeachment of the grand jurors. They had found a bill charging the defendant with five different offences, and the substance of the offer was to show that only one offence had been proved before them." "It cannot be proper," he further observed, "to allow the jurors to be thus assailed. To permit the question to be tried over again in another place, whether the indicting jurors had sufficient evidence or any evidence to warrant their finding, would be plainly contrary to the policy of the law, which, in everything that may affect the jurors themselves, has placed the seal of secrecy upon their proceedings." These remarks were made in a case where the evidence to impeach the proceedings was offered on the trial, a mode much less exceptionable in arriving at the truth, than upon ex parte affidavits.

In the administration of criminal justice, confidence must be reposed somewhere; and it must be admitted that there are few bodies concerned in it that may be more safely trusted than the grand inquest of the county. They are selected for their intelligence, probity and character, from the whole body of the

county. In the county of Erie, whence this jury were drawn, the list out of which it was selected is limited to the number of three hundred, in a population of some one hundred thousand; a fact that more strongly illustrates the high character and qualifications of the grand inquest of the county for the discharge of the important duties devolved upon them, than any remarks we could make.

But, assuming that we may be mistaken in these views, there is another, which it is proper to notice, equally decisive of this motion. We have already stated that this indictment contains two classes of counts, and that one of them rests upon a statement of facts showing that the magistrate had jurisdiction of the case to issue the warrant, the issuing of the same, the arrest, &c. If this class of counts is well founded, and of which we entertain no doubt, then the indictment must be sustained, even conceding the absence of the evidence as alleged by the affidavits upon which the motion is founded.

By section 6 of the act of September 18, 1850 (9 Stat. 463), it is provided, that when a person held to service, &c., shall escape, &c., the person to whom such service is due, &c., may pursue and reclaim such fugitive, either by procuring a warrant from some one of the courts, judges or commissioners, for the apprehension of such fugitive, &c., or by seizing and arresting such fugitive where the same can be done without process, and by taking or causing him to be taken forthwith before such court, judge or commissioner, whose duty it shall be to hear and determine the case of such claimant, &c. If the facts, as presented before the commissioner, brought the case within his jurisdiction, and authorized the issuing of the warrant for the arrest, then the ministerial officer had full authority to make the arrest, and was bound to make it; and any person who knowingly rescued or attempted to rescue the fugitive from the custody of such officer, or aided, abetted or assisted in such rescue, was guilty of the offence charged in the indictment. The person thus arrested under the warrant is in the custody of the law, and any one engaged in the attempt to take him forcibly out of such custody, subjects himself to its penalties. When the warrant is issued by the authority of the law, it is made the duty of the marshal and deputy marshal, under heavy penalties, (section 5,) to obey and execute it; and it would be absurd to hold, that such officer could not be protected in the execution of the process, when the proof before the magistrate was sufficient, under the statute, to confer jurisdiction to issue it. In this, as in every other case of legal proceedings of an analogous description, it is sufficient to justify the arrest of the person, and his detention in custody until he is discharged by due course of law, that the warrant was issued by competent authority. The officer must be protected in its due execution, if the law of the land is to prevail; and any person concerned in the endeavor to obstruct it, or to take the person arrested forcibly out of his hands, becomes a public offender, and liable to the punishment the law annexes to the offence.

The question, whether the person is a fugitive from service or not, or whether such service is due to the claimant or not, is a question the authority to determine which, at the final hearing, is conferred by law upon the magistrate issuing the warrant—not upon the marshal, the ministerial officer, whose duty it is made to execute it. If these facts are sufficiently established before the magistrate to authorize the process, the marshal is authorized to arrest and detain the person until the hearing has taken place according to the provisions of the statute, and until the truth or falsity of the facts is established by the evidence. The question is one exclusively for the magistrate to determine, and, until that determination, the person arrested is in the custody of the law.

These principles are too common and familiar to require illustration or authority; and, in our judgment, upon any sound construction of the provisions of the act of congress on this subject, must govern the case. We have examined these provisions with some care, and the above are the deliberate conclusions at which we have arrived.

There is a remaining question in the case, which it is proper to notice—namely, the charge impeaching the conduct of Mr. Gates, the deputy marshal, whose duty it was made to draw the grand jury from the box of jurors for the county of Erie, and also to summon them for the term of the district court held at Buffalo, when this indictment was found. This charge is founded upon the affidavit, on information and belief, of one of the parties indicted. We have the affidavit of the deputy marshal, of the clerk of the county, and of a third person, who were present at the drawing and witnessed it, and they show that the charge is utterly unfounded, and most unjust as it respects this officer. The drawing took place in the usual way, and in strict conformity to the law. There is not the slightest ground for the imputation against the fairness and good faith of the deputy in the discharge of his duty, either in the drawing or the summoning of the jury, and it never should have been made.

For the reasons above given, the motion to quash the indictment must be denied.