THE PEOPLE *vs.* SIMEON B. JEWETT.

A challenge to the array will not be allowed on the ground that in the selection of grand jurors, all persons belonging to a particular fraternity or association were excluded, if those who are returned are unexceptionable and possess the qualifications required by statute.

It is good cause of exception to a grand juror that he has formed and expressed an opinion as to the guilt of a party whose case probably will be presented to the consideration of the grand inquest; so also a grand juror's having evinced feelings of hostility towards such party is good cause of exception. But these exceptions must be taken before the indictment is found, and will not afterwards he heard.

A certiorari to remove an indictment, directed to the oyer and terminer, will not be quashed, because, at the time of the allowance of the writ, the indictment is in the sessions, if when the writ be served the indictment be in the oyer and terminer.

MOTION to quash indictment. At the general sessions holden in Monroe in March, 1829, the defendant and one Burrage Smith were indicted for having with others conspired, without any legal authority or justifiable cause, to carry off and transport one William Morgan to some place unknown; and that in pursuance and prosecution of such conspiracy, they confined him in a carriage and furnished means for his abduction. The grand jury came into court on the 27th day of March; the foreman, in the presence of the jury, presented the bill of indictment, which was received by the clerk of the court, marked filed as of the day it was presented and handed by him to the district attorney of the county. At the request of the public prosecutor that no entry should be made in the minutes of the court of the presentment of the bill of indictment until the defendant should be arrested, no such entry was made during the sitting of the court, nor was it made until the month of August. On the 6th April, the defendant entered into a recognizance to answer to the indictment. In June a court of general sessions was holden in Monroe, and another on the first Mon-

day of October instant, when the defendant applied to the general sessions that the entry made in the minutes of March term be stricken out; which application was denied. The common pleas and general sessions of Monroe in March were held at the same time by the same judges. The defendant is an attorney of the common pleas, and was present at the empánelling and swearing of the grand jury, who found the bill of indictment against him.

. The bill of indictment, as found by the grand [jury, contained no *caption.* During the continuance of the court of sessions in March, an order was entered for the transmission of the bill of indictment to the next court of oyer and terminer to be holden in the county of Monroe. In the month of August, the deputy clerk of the sessions annexed a caption to the bill of indictment, stating that the same had been found and presented at the general sessions holden in March preceding, naming the judges who presided in the court, and the grand jurors who had found the same. On the 31st day of August, being the first day of the oyer and terminer in Monroe, the bill of indictment was filed in that court. On the 2d day of September a *certiorari* was presented, removing the same into this court, which was allowed by the chief justice on the 3d day of August. It is directed to the judges of the oyer and terminer and jail delivery of Monroe, returnable on the first day of this term.

In addition, the defendant presented the following facts by affidavits: 1. That the defendant had been informed, (which information he believed to be true,) by a person who had been supervisor of the town of Mendon in the county of Monroe for the years 1827 and 1828, that the *anti-masonic* supervisors of the several towns in the county, or a part of them, in preparing the lists of grand jurors for the county for those years, intentionally and purposely left off and omitted to put on to the said lists competent and qualified men for grand jurors, for no other reason than that they were members of the masonic fraternity; and that they selected those who were most zealous anti-masons; 2. That a pamphlet had been published by a committee of whom Isaac Lacey, the *foreman* of the grand jury who had presented the

bill of indictment against the defendant was one; that the title of the pamphlet is "A narrative of the facts and circumstances relating to the kidnapping and presumed murder of William Morgan;" that to it are appended remarks of the committee, in which, after stating amongst other circumstances that two persons, naming the defendant as one of them, on being called as witnesses before the grand jury of Monroe refused to testify, because, as they alleged, they could not do so truly without criminating themselves, they conclude as follows: "Whether all who were concerned in his kidnapping have been accessaries or consented to his death, we undertake not to decide. But whatever were the original designs or motives of those who were concerned in his disappearance, all of them who have not fully, frankly and promptly explained the part they are known to have performed, have, we think, no right to complain if their fellow-citizens in general regard them as accessaries to the murder of William Morgan, and shall hereafter treat them accordingly." 3. That Benjamin Wood, one other of the grand jurors, had, before the finding of the bill of indictment, in repeated conversations declared that the defendant was concerned in the abduction of Morgan; aided in carrying him off; was guilty thereof; and ought to be punished therefor. And that in such conversations Wood discovered great malignity of feeling and bitter hostility against the defendant.

On this state of facts the defendant moved to quash the indictment.

*M. T. Reynolds, J. A. Spencer,* and *E. Griffin,* counsel for the defendant.

*D. Cady,* for the people.

*For the defendant,* it was insisted that a bill of indictment without a caption is bad, (1 Chitty's C. L. 327, 384;) that the bill in this case should be considered as without a caption, the clerk not being authorized to prefix the caption because not warranted by the records of the court. There was no entry in the minutes of the court stating the finding of the bill, except what had been made in the recess of the

court; the court itself at a subsequent session could not have altered or changed the minutes of the proceedings of a previous term, much less had the clerk a right to do so. Besides, after the allowance of the certiorari, all subsequent proceedings are erroneous, (1 Chitty's Crim. Law, 390. 1 Salk. 148.)

ALBANY,
October, 1829.

The People
v.
Jewett.

The grand jury were improperly selected by the supervisors. An erroneous principle of exclusion is as objectionable as a vicious selection. None are to be excluded but those who are not possessed of the necessary property qualification to serve as petit jurors; who are not of approved integrity; who are not of fair character; who are not of sound judgment, and who are not well informed. (Statutes, vol. 8, 312, a.) Instead of taking the statute for their guide, the supervisors selected the grand jurors with a direct reference to the subject on which the public mind was exasperated, and the effect of the exclusion of masons was the same as an improper selection for an undue purpose.

The foreman of the grand jury and the other juror having formed and expressed opinions as to the guilt of the defendant previous to their being empanelled, were not competent to find a bill against him. By the common law, grand jurors are to be " good and lawful men," that is, men free from all objections, and such as might serve upon a petit jury. If improper persons are returned, 'it is the practice of the courts to *reform* the panels, as well of grand inquests as of a petit jury. (1 Chitty's Crim. Law, 307. Hawkins, book 2, ch. 25, § 18, 28, 33. Bacon's Abridg. tit. Juries A.) The provision in the Revised Statutes, (2 R. S. 724, § 27, 28,) limiting the challenge to special cases before the jury are sworn, recognizes the law as existing, for which the defendant contends. A party recognized or in jail, must challenge the juror when he comes to be sworn, but one who has no day in court is put to his plea in avoidance or motion to quash. The latter is the universal practice in our courts.

*For the People.* The certiorari was misdirected. It was allowed on the *third* of August, and directed to the oyer and terminer, when in fact, the indictment was in the sessions

till the *thirty-first* day of August. It never was legally in the oyer and terminer, and therefore must be considered as remaining in the sessions. (2 R. L. 150.) If this be correct, then, instead of the indictment the certiorari should be quashed

A caption to the indictment was not necessary in the sessions. It became necessary only in consequence of its removal, to shew that it was found in a court of competent jurisdiction. The bill of indictment was a record of the court, it became such when filed, the same as any other paper which is filed, and this authorized the affixing of the caption. The entry in the minutes of the bringing in of the bill does not add to its validity; there is therefore no necessity for it. A good reason is given in this case why the entry was not made, and why it should not be required. Besides, the objection comes too late. Two courts of sessions have been held since the bill was found, and the defendant arrested. He should have applied before. The delay so highly beneficial to him, should he now succeed, is a sufficient answer to the motion.

The first objection urged is to the *array*. This should have been made when the jurors were empanneled. The defendant was present in court, and though not under recognizance, if apprised of partiality, or of gross improper conduct in the selection of the jurors, he should have made the objection; even as *amicus curiæ*, he might have informed the court. But what is there in the objection that *free-masons* were excluded from the pannel? There is no law requiring a certain number of masons to be empanneled; and if the supervisors, in the exercise of a sound discretion, under the peculiar circumstances of the case, thought fit not to return them as grand jurors, who shall say they erred; that their discretion was not properly exercised? At all events, how is the defendant injured by the exclusion? He does not shew himself a mason.

The objection to the individual jurors is equally untenable. *Lacey* states a fact in relation to the defendant which is not denied, and submits his conclusions to the public. *Wood* says the defendant is guilty. If he speaks from knowledge, and not from prejudice, this is no cause of chal-

lenge. ·But these objections cannot be sustained. The right to challenge has grown up under the statutes, 11th Henry 4, and 3d Henry 8; the one avoiding indictments by outlaws, felons and traitors; and the other authorizing the justices to reform juries. (Bacon's Abr. tit. Juries, A.) We have no such statutes; and the revised laws, instead of recognizing, condemn the principle of those acts. Public policy and the due administration of justice forbid that challenges of this nature should be allowed, especially after indictments found. (9 Mass. Rep. 107.)

*In reply*, it was said that the direction of the certiorari to the oyer and terminer was no cause for quashing it. Had a return been made that the indictment was not in the court, the writ might have been nugatory: but it having brought up the indictment, was a very convincing proof that it was not nugatory, and had not been misdirected.

The following opinions were delivered by the court:

SAVAGE, Ch. J. It is proper, in the first place, to dispose of the motion to quash the certiorari. This was urged on the ground of its being directed to the oyer and terminer instead of the general sessions of Monroe. When the certiorari was allowed, the indictment was in the sessions; when it was served, it was in the oyer and terminer, in pursuance of an order previously made by the sessions. Being there, the certiorari operated upon it, and produced the result intended by it, to wit, the removal of the indictment into this court. There is therefore no reason for quashing the writ.

Whilst the indictment remained in the court of sessions, a caption to it was not necessary. Where a certiorari is sued out to remove an indictment into another court, a caption must be affixed to shew the regularity of the finding of the bill. It is the duty of the clerk to affix it, and he is warranted in so doing, whether an entry is or is not made in the minutes of the court of the finding of the bill. If, in truth, a bill was found by a grand jury, brought into court, filed and made a record of the court, it is enough to justify him. An entry was in fact made in this case, and approved by the

court of sessions, though made after the closing of the term at which the bill was found. We are not called upon to say whether an entry is necessary ; but if necessary, the due administration of justice may require that it should not be made until after the person accused has been arrested. In this case it was omitted, at the instance of the public prosecutor, for the very purpose of preventing publicity being given to the transaction, until the defendant should be arrested. If this is a matter resting in discretion, (and we think it is,) all pretext for the charge of irregularity is destroyed.

By the act directing the mode of selecting grand jurors, passed in 1827, (Statutes, vol. 8, p. 312 a,) the duty of making the selection is conferred upon the supervisors of the several counties of the state. They are required to select such men only as they shall know, or have good reason to believe, to be possessed of the necessary property qualification to sit as petit jurors ; to be men of approved integrity, of fair character, of sound judgment, and well informed. Thus, the qualifications of the grand jurors are defined by statute, and if those selected possess the required qualifications, there can be no objection to the array. I do not approve of the exclusion by the supervisors of any set of men, on the ground of their belonging to any particular association or fraternity. A grand jury should be selected with a single eye to the qualifications pointed out by the statute, without enquiry whether the individuals selected do or do not belong to any particular society, sect or denomination, social, benevolent, political or religious. It is represented to us that one of the supervisors of Monroe had stated that the anti-masonic supervisors of that country, or a part of them, in preparing the lists of the grand jurors, had, on the one hand, intentionally and purposely left off the names of individuals for no other reason than that they were members of the masonic fraternity ; and on the other, that they had selected those who were most zealous anti-masons. If a part of the supervisors erred in the discharge of their duty, it is not to be presumed that a majority of them, upon whom the task devolves finally to determine the persons to be selected, fell into the same error. But if they did thus err, the array cannot for that cause be

challenged. Whilst those who are selected are unexceptionable, the fact that others equally unexceptionable are excluded is no cause of challenge of the array. A challenge can be supported only by shewing that the persons selected are not qualified according to the requirements of the statute.

As to the right of challenge to the polls. The objection urged against Lacey, the foreman of the jury, is that he, with others, published a pamphlet, in which it is stated that the defendant, when called upon as a witness in reference to the abduction of Morgan, had refused to testify, alleging that he could not do so truly without criminating himself; and concludes with strictures on the conduct of the defendant, shewing the estimation in which the juror held the defendant on the subject of the charge against him. It is not perceived how this could disqualify the juror from serving on the inquest, or finding a bill against the defendant. The fact stated by the juror is not denied by the defendant, nor is it intimated that the charge was made from prejudice or hostility. As to Wood, the other juror, good cause of challenge existed. There are causes of challenge to grand jurors, and these may be urged by those accused, whether in prison or out on recognizance; and it is even said that a person wholly disinterested may, as *amicus curiæ*, suggest that a grand juror is disqualified. But such objection, to be availing, must be made previous to the juror being empannelled and sworn. It has been urged upon us that the defendant not having been apprised of any intended proceeding against him, not having been arrested on a criminal charge, or required to enter into recognizance to appear at the court where the bill of indictment was found, had not an opportunity to make his challenge; that now is his earliest day in court, and that he ought therefore to be permitted to avail himself of this defence. Although the force of this appeal is felt, I cannot yield to it, and consent that after an indictment found the party charged may urge an objection of this kind in avoidance of the indictment. The books are silent on the subject of such exception after indictment found, and in the absence of authority, I am inclined to say, in consideration of the inconvenience and delay which would unavoidably ensue in the

ALBANY,
October, 1829.

The People
v.
Jewett.

administration of criminal justice, was a challenge to a grand juror permitted to be made after he has sworn and empannelled, that the objection comes too late. I am therefore of opinion that on neither of the grounds urged by the defendant ought this motion to be granted.

MARCY, J. I fully concur in the views taken by the chief justice in this case, and it is useless perhaps for me to enlarge upon them. In relation, however, to one or two points embraced in this motion, I will add a few remarks.

The caption is no part of an indictment. It is said to be only the style of the court in which the indictment is found. While the indictment remains in that court, it is not necessary, and I believe not usual, to add the caption; but when it is removed by a writ of *certiorari* or otherwise, the caption is added by the clerk. It is a mere ministerial act of that officer. I do not discover that it was not properly done in this case.

The alleged misconduct of the supervisors of Monroe county, in selecting the grand jurors, if shewn in a more satisfactory manner than it is in this case, would not authorize us to sustain the motion on that ground. One of that body avowed, that in executing the duties of the act of 1827, he excluded from his choice all free masons and that some others did the same. I am free to say, that the setting up a rule of exclusion, not warranted by the statute, was improper and reprehensible, and if corruptly done, constituted an offence; and even if done under a mistaken notion of duty, it can receive no countenance from us.

After diligent search, I do not find that an objection to an indictment has been sustained where the jurors were *probi et legales homines*. Although some of the supervisors acted upon a rule that excluded individuals who had all the qualifications required by statute, this did not operate to bring in any person who had not those qualifications. The law does not require all the qualified persons in the county to be selected. The supervisors selected the full number, and those they selected were competent. Notwithstanding all the members of a particular association were excluded, it does not appear that the supervisors returned one man who had not the requi-

site property qualification, who was not of approved integrity, sound judgment and well informed. I admit that it was properly urged on behalf of the motion, that the being a free mason was no disqualification, but it is no less true, that being an anti-mason is not a disqualification. The jurors returned by the supervisors were therefore legal jurors, and the indictment found by the jury cannot be quashed on the ground of its being the act of improper indictors.

I have had more difficulty in disposing of the objection made to Lacey and Wood. What is urged against Wood particularly, would have been sufficient to exclude him on a challenge upon the ground of favor; though on the argument, it was said to be otherwise by the counsel for the people. The opinion of Ch. J. Marshall on the trial of Col. Burr,, and of Woodworth J. in the case of *The People* v. *Barker*, are decisive of this question. If the objection to these jurors could have been presented when they were empannelled, and the facts on which it rests properly authenticated, I think it would have been sufficient to exclude them.

As the defendant was not recognized to appear at the sessions when the indictment was found, he did not know that any charge would be laid before the grand jury against him, and consequently he had no opportunity to object to these jurors before they were sworn and had presented their indictment. He had not done or omitted to do any act whereby his rights are compromited; but it does not thence follow that he can have this indictment quashed, because, at a previous stage of the prosecution, he would have had a right to remove one of the jurors from the panel. Though I feel the force of the argument, that the defendant should be allowed the benefit of an exception to a partial grand juror, I cannot turn my view from the consideration of the great delays and embarrassments which would attend the administration of criminal justice, if it was to be obtained in the way now proposed. No authority for adopting this course was shewn on the argument, and I have not since been able to find any. It would be a novel proceeding, and there is reason to fear it might be followed with more serious difficulties than are now foreseen.

ALBANY,
October, 1829.

The People
v.
Jewett.

Among the objections, not the least, as I conceive, would be the want of a proper mode to establish the alleged disqualification of the grand jurors objected to. It could not be well done by affidavits, and to do it through the instrumentality of triors, almost necessarily in the absence of the person tried, and long after he had performed the act which it would be the object of the trior to shew his disqualification to perform, would be worse than inverting the order of things. Great caution should be used to preserve the administration of justice pure and impartial. It is not so vitally important to persons accused that grand jurors should be beyond all exception, as that petit jurors should be so, and in some instances the law makes a distinction between them ; but I think it is rarely or never the case, that the finding of a petit jury, either in a civil or criminal case, has been set aside on the discovery that a juror had a pre-conceived opinion in relation to the matter passed upon, although such opinion would have constituted a valid objection to his being empannelled.

Motion denied.*

*Since the determination of this question, Mr. Justice Marcy has called the attention of the reporter to a case which arose in the supreme judicial court of Mussachusetts, in 1811, respecting *the challenge to a grand juror.* On a grand juror being called to be sworn, Story, (probably now Mr. Justice Story of the United States' bench,) as *amicus curiæ,* suggested that one —— had been accused of the crime of murder, and that his case would probably come under the consideration of the grand jury; that the juror called was a neighbor of the accused, had originated the complaint against him, and had most probably formed a strong opinion of his guilt. The court, alluding to the challenges to the grand jurors on Burr's trial in Virginia, and pronouncing that a solitary instance, observed, that if objections of this nature were to be received, the course of justice would be greatly impeded; that the knowledge of the general character of parties and witnesses by those who reside in the vicinity of persons accused, rendered them more fit to serve on grand juries. If, however, any individual juror should be sensible of such a bias upon his mind that he could not give an impartial opinion in any particular case under the discussion of the jury, such juror would feel it his duty, as it would be his right, to forbear giving an opinion, or perhaps to withdraw, while the subject was under discussion. The juror was sworn. (8 Mass. R. 286.)