# 684

## WAGNER *v.* THE PEOPLE.

[June,

Opinion of the Court, per HUNT, J.

## GEORGE WAGNER *v.* THE PEOPLE.

Upon a trial for murder, the prisoner was charged in the indictment with having committed the offense in the city and county of New York. Upon the trial the witnesses spoke of the occurrence as having taken place in Broome street.

*Held,* that, as the prisoner's counsel, throughout the trial, assumed the fact that Broome street was in the city of New York, calling and cross-examining witnesses, addressing the jury, and objecting to rulings of the court, on that theory—it is too late, on appeal, to make the objection to the jurisdiction of the court, upon the ground that the offense was not proved to have been committed within its jurisdiction.

The same view was taken of the omission to prove the year in which the offense was committed, the assumption upon the trial being that it was in the year 1865, as charged in the indictment.

While an indictment remains in the court in which it is found, a caption is not necessary. The caption forms no part of the indictment.

Where the case calls for no charge on the subject of insanity, no exception lies for neglect or refusal so to charge.

HUNT, J. George Wagner was indicted for the murder of his wife, Mary Wagner. The offense was alleged to have been committed in the city of New York on the 21st day of July, 1865. He was tried in the General Sessions of that city, was convicted and sentenced to death. A writ of error was brought, by which his case was carried to the General Term of the first district, where the conviction was affirmed. An appeal is brought to this court, and error is alleged in several particulars. The first ground of complaint is this: that the General Sessions of the city of New York has jurisdiction only in the case of an offense committed within the territorial limits of that city, and that it was not proved that the offense was committed within the city limits, the witnesses simply speaking of the occurrence as having taken place in Broome street. The answer to this objection is, that it was assumed throughout the trial by the prosecution and by the prisoner's counsel, that Broome street was in the city of New York, and that the offense was committed within the city limits. No question was suggested on this point. The prisoner was charged in the indictment with having commit-

ted the offense within the city and county of New York, and within the first ward thereof. The trial took place in a court having jurisdiction only of offenses thus committed; the locality was proved to have been upon a portion of Broome street; Thompson street is described as adjoining it, and other streets in the city of New York are incidentally mentioned by the witnesses who describe the transaction. Without inquiring whether this court can take judicial notice that Broome street is in the city of New York, it is sufficient to say that the prisoner's counsel, throughout the entire trial, assumed such to be the fact, cross-examined the witnesses for the prosecution, and called witnesses on his own behalf, addressed the jury and interposed objections to the judge's charge, on that theory, and that it is now too late for him to make the objection.

2. Of a similar character is the objection, that no year is stated by the witness as that in which the offense was committed, but the testimony is that it took place on the 22d of July. The indictment charged the offense as having been committed on the 22d of July, 1865, and the trial took place on the 19th of October following. Here again it was assumed throughout, as would probably be the legal inference, that it was upon the July next preceding, to wit, that of 1865, and the entire trial was conducted upon that assumption. It did however appear from the testimony of Augustus Pottier, a witness called by the prisoner, that the prisoner left his employment and set up business for himself in February, 1865, and it appeared from other witnesses that he had been in business for himself but a few months before the commission of the offense charged.

3. It is objected that the indictment is bad, because the caption does not allege that the grand jurors " were then and there sworn and charged." While an indictment remains in the same court in which it is found, a caption is not necessary. (*People* v. *Jewett*, 3 Wend., 314.) The caption forms no part of the indictment.

4. The court was asked to charge that, " where the evidence establishes an hypothesis consistent with the prisoner's

insane state of mind, it is the duty of the jury to adopt that hypothesis in accounting for the killing." To which the court responded : "Of course that is so, if you have any doubts as to the degree of the offense committed."

What was meant, precisely, by this request it is difficult to comprehend. The case is probably imperfect, as the answer is not entirely responsive to the proposition. It was probably intended to request a charge that, where the evidence established "a state of facts" consistent with the prisoner's insane condition of mind, it was the duty of the jury to give the prisoner the benefit of that evidence, or give due weight to those facts, in accounting for the killing. If so, the request, in the abstract, was correct, and the proposition implied was reasonable. It was quite unimportant, however, in the present case, for two reasons. First, the court had already, with great clearness and accuracy, laid down the law upon the subject of insanity. Among other statements, the judge had used this language to the jury : "Every man is presumed to be sane, and to possess a sufficient degree of reason to be responsible for his acts. When the question of insanity is presented upon the evidence, the prisoner is entitled to the benefit of any doubt which may arise upon the question; that is, the jury must be satisfied, beyond all reasonable doubt, that he was sane when he committed the act; but if the jury are satisfied, beyond the reasonable doubt, that the prisoner knew that the nature and quality of the act he was doing was wrong, the law holds him responsible. I have been requested to charge you that, if the prisoner committed the act in a moment of frenzy he cannot be convicted of murder in the first degree. I not only charge that proposition, but if his mind was in that condition he cannot be convicted of any offense. The true test of responsibility for acts committed is commonly known as the test of right and wrong. If the jury are satisfied that the prisoner knew the difference between right and wrong, in regard to the particular act in question, then the law holds him responsible for his act. If they are not so satisfied, of course it would be their duty to acquit him absolutely." This, I think, gave

the prisoner the full benefit of the law, as embraced in his special request, as intended to have been made.

. But again. The charge of the judge on this point, and his answer to the special request, in detail and in its entire scope, were gratuitous, and beyond the rights of the prisoner. The testimony in the case does not furnish a single fact, idea or suggestion, on which a claim of insanity can be based. The evidence discloses that on the 22d of July the prisoner had been engaged at his work, and in the after part of the day went into the room in his house where his wife was staying. After the lapse of a short period of time, shrieks and screams were heard, the by-standers rushed in and found the prisoner in the act of taking the life of his wife. She was upon the floor, the prisoner standing or kneeling above her, inflicting frequent blows with a hatchet, which he left imbedded in her brain. He fled a short distance, was pursued, arrested, and, when asked why he had committed such a deed, simply answered that he had a cause for it. This is the whole of the evidence on this point. We know nothing of the provocation to the deed, real or imaginary. We are ignorant of what took place at the last fatal interview. We only know the result. The prisoner was not greatly excited. He gave no evidence then, or before or since, of any aberration of mind, or even of eccentricity. He was an ordinary, unmarked man, exhibiting the usual evidence of capacity and of sanity, with no evidence of delusion, of delirium, or of ignorance of his moral or social duties. He simply murdered his wife, cruelly, brutally and remorselessly. The fact that he had been previously a man of good character formed no defense to the act, and furnished no evidence of insanity. The case called for no charge on the subject of insanity, and no exception lies for the want of it. (See *Willis* v. *The People*, 32 N. Y., 715).

The judgment of the court below should be affirmed, and the record remitted to the Supreme Court for further proceedings.

All the judges concurring,

Judgment affirmed.