## UNITED STATES v. MITCHELL.

(Circuit Court, D. Oregon. April 25, 1905.)

No. 2,902.

1. GRAND JURY—QUALIFICATION OF JURORS—STATE LAW—FEDERAL COURTS—APPLICATION—ASSESSMENT ROLL.

Rev. St. § 800 [U. S. Comp. St. 1901, p. 623], requires that grand jurors in federal courts shall have the same qualifications as jurors in the highest court of law in the particular state. B. & C. Comp. § 965, prescribes the qualifications of jurors, but does not require that their names shall be on the assessment roll. Section 970 requires the county court at its first term in each year to make a jury list from the last preceding assessment roll of the county containing the names of persons to serve as grand and trial jurors; and sections 971 and 972 require such list to contain the names of not less than 200 qualified persons, if there be that number of qualified jurors on the assessment roll, and not more than 600. *Held*, that the requirement that the names of jurors selected should be on the assessment roll was merely a provision relating to the mode of selecting jurors, and that the fact that the name of a grand juror selected in the federal courts was not on such roll did not disqualify him for service.

2. SAME—INDICTMENT—OBJECTIONS.

B. & C. Comp. § 1349, provides that an indictment must be set aside on motion of the defendant when not found or indorsed and presented as prescribed in title 8, c. 7, of the Code, and when the names of the witnesses examined before the grand jury are not inserted at the foot of the indictment as indorsed thereon. *Held*, that the effect of such statute, in the absence of any other provision for setting an indictment aside, was to limit the disqualification of grand jurors to such grounds, and to prevent pleas in abatement based on objections not going to the qualifications of the grand jurors, but merely to the regularity of the proceedings by which the jury was organized.

3. SAME—EXCUSING JURORS.

The court has jurisdiction to discharge a grand juror for cause, and the possible or probable effect of the absence of such juror on subsequent proceedings of the grand jury does not admit of inquiry.

[Ed. Note.—For cases in point, see vol. 24, Cent. Dig. Grand Jury, § 28.]

4. SAME.

Where the record shows that certain grand jurors were discharged "for good cause shown to the court," such finding is conclusive as to the sufficiency of the cause.

5. SAME—GRAND JURORS—APPEARANCE—SWEARING.

Where a grand juror does not report until after the jury has been sworn and charged, and there are enough grand jurors without him, he may or may not be sworn, in the discretion of the court.

6. SAME—NUMBER OF GRAND JURORS.

The fact that more than 24 persons were summoned to appear as grand jurors is immaterial, and does not affect the validity of an indictment.

[Ed. Note.—For cases in point, see vol. 24, Cent. Dig. Grand Jury, § 4.]

7. SAME—DISTRICT ATTORNEY—COMPETENCY.

Where a United States district attorney was appointed by a court having authority to make a valid appointment, and he was in the undisturbed and unquestioned exercise of the powers of such office at the time an indictment was returned, he being a de facto officer, it was no objection to the indictment that the appointment was invalid on the ground that such attorney was not a permanent resident of the district.

8. SAME—PREJUDICE—PRESENCE BEFORE GRAND JURY.

Mere general objections that a United States district attorney who obtained an indictment against defendant was very prejudiced against him,

had actively worked up feeling against him, and had been present in the grand jury room while the jury were deliberating on the indictment, etc., were insufficient to authorize the vacation of the indictment.

9. SAME—FEDERAL COURTS—IMPANELING GRAND JURY—OBJECTIONS TO INDICTMENT—DISCRETION.

Rev. St. § 800 [U. S. Comp. St. 1901, p. 623], provides that federal courts may, by rule or order, conform the designation and impaneling of juries, in substance, to the laws and usages relating to jurors in the state courts. B. & C. Comp. § 1269, provides that no challenge shall be allowed to the panel from which a grand jury is drawn, unless made by the court for want of qualification, as prescribed by section 1268, which declares that, before accepting a person drawn as a grand juror, the court must be satisfied that the person is duly qualified to act, but, when drawn and found qualified, he must be accepted, unless excused by the court; and section 1349 only authorizes an indictment to be set aside when not found, indorsed, and presented as prescribed by title 18, c. 7, and when the names of witnesses are not indorsed thereon. *Held*, that under Rev. St. U. S. § 722 [U. S. Comp. St. 1901, p. 582], providing that when the laws of the United States are not suitable, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses, the common law. as modified by the Constitution and laws of the state, shall govern, the requirement of section 800 was imperative, so that an indictment in the federal court sitting in Oregon could not be set aside on grounds other than those specified in section 1349, except in the discretion of the court.

10. SAME—ALIENAGE.

Under B. & C. Comp. § 1269, providing that no challenge shall be made or allowed to the panel from which a grand jury is drawn, nor to an individual juror, except when made by the court for want of qualification as prescribed in section 1268, an objection that a grand juror was disqualified by reason of alienage, as provided by section 965, cannot be raised on objection to an indictment.

Francis J. Heney, U. S. Dist. Atty.
A. S. Bennett, for defendant.

BELLINGER, District Judge. The defendant pleads to the indictment that the grand jury returning the same was not regularly organized or impaneled, but was irregular and void, by reason of the fact that upon the impaneling of the jury on October 18, 1904, it included W. E. Robertson and Carl Phelps, who were qualified and lawful jurors; that on October 19th Robertson was excused for the term by order of the court, without cause, and on January 27th following Carl Phelps was, by order of the court, excused, although he had been taking part in the investigation of this charge; that one George Peebler was added to the grand jury on October 25th; that, the grand jury having partially investigated the charge against the defendant, on the 19th of December Fred G. Buffum was, by order of the court, added to the panel, that both of the jurors so added continued as members of the jury until its final discharge, and voted upon the finding of the indictment—all of which is alleged to have been to the defendant's prejudice. For a further answer and plea, it is alleged that George Guistin, a member of the grand jury, was not a qualified juror, by reason of the fact that he was not a citizen of the United States, but was and still is a citizen of some foreign country. For a still further answer and plea, it is alleged that the names of Frank

136 F.—57

Bolter and Joseph Essner, who were members of the grand jury, were not upon the preceding or any assessment roll of any county in the state at the time they were sworn in as jurors, and that, as defendant believes, neither of them was a taxpayer in the county of his residence. For the last answer and plea, it is alleged that the district attorney, Francis J. Heney, was and is not a resident in this district, and that. because of such nonresidence he could not be legally appointed to the office of district attorney; that he is very prejudiced against the defendant, and has been very active in working up feeling against him through the newspapers and oth-·erwise, both in and out of court; that defendant is informed,. be-lieves, and alleges that said Heney was very vindictive and bitter in his prosecution of the charge against defendant before the grand jury, and greatly influenced the jury to find this indictment; and defendant alleges that, if said Francis J. Heney had not so unlaw-fully appeared before said grand jury, this indictment would. not have been brought—all to the defendant's substantial prejudice. It is further alleged, upon information and belief, that said Francis J. Heney remained with the grand jury and was present "when they were deliberating on the evidence and on the charge," and that he greatly prejudiced the defendant by arguments and denunciations against the defendant, and by threats and intimidations towards all or a portion of the grand jurors, all to the defendant's further substantial prejudice.

The questions of the alleged disqualification of the jurors Bolter and Essner, of the regularity and legality of the organization of the grand jury, of the authority of Francis J. Heney to act as dis-trict attorney, and those which relate to his conduct in the matters complained of, will be first considered; leaving the further ques-tions as to whether the impaneling of the grand jury by the court does not involve a final decision as to the qualifications of the in-dividual jurors, and finally whether any of the objections made can be urged by plea or otherwise, except such objections as are ad-dressed to the sound discretion of the court.

Section 800 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 623] provides that:

"Jurors to serve in the courts of the United States in each state respective-·\,7, shall have the same qualifications and be entitled to the same exemptions as jurors of the highest court of law in such state may have and be entitled to at the time when such jurors for service in the courts of the United States are summoned."

The qualifications of jurors under the state law are prescribed in section 965 of the Code (B. & C. Comp.). That section provides that:

"A person is not competent to act as a juror unless he be (1) a citizen of the United States; (2) a male inhabitant of the county in which he is re-turned, and who has been an inhabitant thereof for the year next preceding the time he is drawn or called; (3) over twenty-one years of age; (4) in the possession of his natural faculties and of sound mind. Nor is any person competent to act as a juror who has been convicted of any felony, or a mis-demeanor involving moral turpitude."

It is made a ground of challenge that a person has been summoned and attended court as a juror at any term within one year prior to the challenge, or that he has served as a juror within such time.

There is no other positive disqualification for jurors provided by the laws of Oregon. It is not a disqualification by this statute that the name of a juror is not on the last preceding county assessment roll, and that he is not a taxpayer in the county; and, unless such a disqualification can be implied from the provisions of the law for selecting jurors, it does not exist. The law which provides the manner of selecting jurors requires the county court of each county to make, at its first term of each year, or, in case of omission or neglect to do so, then at any following term, from the last preceding assessment roll of the county, a list, denominated a jury list, containing the names of persons to serve as grand and trial jurors until the following year, or new lists are made. B. & C. Comp. § 970. It further provides (section 971) that, "in preparing the jury list, the names of those persons only must be selected who are known or believed to be possessed of the qualifications prescribed in section 965." The jury list so made is required to contain the names of not less than 200 persons, if there be that number of names of qualified jurors on the assessment roll, nor more than 600 names. Section 972. From this list the county clerk is required to take the names that are placed on the ballots to be deposited in the box from which jurors are drawn.

The question is therefore presented, does the state law, which requires a jury list to be made by the county court from the assessment roll, operate to make it a qualification for jury service that the juror's name shall be upon such roll?

In the case of State v. Carlson, 39 Or. 23, 62 Pac. 1016, 1119— an appeal from Multnomah county—there was a motion to set aside an indictment on the ground that, when it was found, one of the grand jurors was not, and had not been for a year preceding, an inhabitant or taxpayer of the county, but was a resident of the state of Washington, and that his name was not on the assessment roll of Multnomah county for the year preceding January 31, 1900. It was admitted that his name was on the assessment roll for the year 1898. The court found, as a matter of fact, that the juror's name was taken from the list made by the county court at its first term in 1899 from the last preceding assessment; that being the assessment from which it should have been taken. Whether it is required that a juror's name shall be upon the assessment roll, to qualify him for jury duty, was not decided; and the inquiry was not material, in view of the court's decision that the acceptance of the juror at the time the jury was impaneled was necessarily a conclusive decision upon the question, not subject to contradiction or review.

It has never been decided in this state, so far as appears, that a property qualification is necessary to the competency of a juror. A person may be a property owner and taxpayer, whose name is

not upon the particular roll mentioned in the section in question. There may be a sheriff's assessment of property subsequent to the making of the list by the county court from the assessor's roll, and equally conclusive of the fact that the party assessed is a taxpayer. Furthermore, it is common knowledge that many of the largest property interests are assessed in the names of corporations or of trustees. If the names of the stockholders and beneficiaries are not upon the assessment roll, nevertheless they are under the bonds of self-interest to maintain good government equally with those whose names are there.

The provision which requires the county court to make a jury list from names on the assessment roll does not prescribe a property qualification for jurors, but a mode of selecting them. If it becomes a qualification for jury duty that the juror's name shall be upon the assessment roll, because the jury list is required to be made from such roll, then it is also a requisite to his qualification that his name shall be upon the jury list, since the names that are placed in the jury box by the clerk are required to be taken from that list. There is as much to be said in this connection for the list as for the roll. The names upon the jury list are required to be taken from the roll, and the names to be placed in the box are required to be taken from the list; and so, as already stated, if a juror must be upon the roll to be qualified, for the same reason he must be upon the list. Furthermore, there are various requisites as to the list necessary to its legality. If the list should contain the names of more than 600 persons, or less than 200 when there were that number on the roll, it would be an illegal list; and, if the qualification of a juror depends upon the place where his name is found, such a juror would be disqualified. The mode provided for the selection of jurors in section 970 is adapted to the requirements of section 965 relating to the qualifications of such jurors. It is, by the latter section, a positive requirement that the person selected shall be over 21 years of age, and an inhabitant of the county for the year preceding the time he is drawn. These requirements are more likely to be found upon the county assessment roll for the preceding year than they would be in a list prepared at haphazard from among those found in the county, since it is safe to assume that, as a very general rule, those whose names are upon the assessment roll are, and for the year preceding have been, inhabitants of the county, above the age of 21 years. If the Legislature intended that a person should not be qualified to sit on a jury unless he is a taxpayer in the county or his name is on the county assessment roll, it must be presumed that these disqualifications would have been included with those specified in section 965; that the framers of the law would have added to the requirements specified in that section, that a juror must be for the preceding year an inhabitant of the county, the words, "and his name must be on the county assessment roll for such year," or would have inserted after the word "inhabitant" the words "and taxpayer." "Enumeration weakens as to things not enumerated,"

and, when two or more things are so related that one necessarily suggests the other, the failure to enumerate as to one is conclusive of an intention to exclude. It must be borne in mind that section 965, as it originally stood, and that relating to the making of the jury list from the assessment roll, were enacted at the same time, and were within the scope and purpose of a single act. It is clear that the positive disqualifications enumerated by one section of such a law cannot be added to by the mere implication of another section. Furthermore, the section in which the qualifications of jurors are enumerated was re-enacted, by way of amendment, in 1882—20 years subsequent to the original enactments—so as to add the provision which makes it a ground of challenge that the juror has been summoned and attended court within one year. In effect, therefore, this section is a new enactment, long subsequent to that which provides for the making of a jury list from the assessment roll, and the enumeration therein of the qualifications of jurors and grounds of challenge must be held to include all grounds of disqualification and challenge existing at the time. It is obvious that these objections do not go to the qualifications of the juror, but to the regularity of the proceedings by which the jury is organized. And in this connection I quote from the opinion of Judge Thayer in the case of the United States v. Eagan (C. C.) 30 Fed. 612:

"If the point to be decided by the court was to be determined solely with reference to the common law, and without reference to local laws, the better opinion seems to be that no objection to an indictment ought to be allowed, based merely on an irregularity in the manner of selecting a part or the whole of the grand jury which found the bill, if in all other respects they were duly qualified jurors. Thus in Thompson & Merriam on Juries it is said that the only objection which can be taken to the grand jurors by plea in abatement, after they have been sworn and made presentments, 'must be such as would disqualify the juror to serve in any case. In other words, the plea must show the absence of positive qualifications demanded by law,' and not merely an irregularity in the method of selection."

In the case of United States v. Reeves, Fed. Cas. No. 16,139, 3 Woods, 199, the court distinguishes between the absolute disqualification of a juror, and objections that constitute a ground of challenge. The case arose under section 812 of the Revised Statutes [U. S. Comp. St. 1901, p. 627], which provides that no person shall be summoned as a juror more than once in two years, and makes the fact that he has been so summoned and attended a ground of challenge. The court, after stating that pleas in abatement, being dilatory, are not favored, cites a number of cases to show how reluctant courts are to interfere with the indictments of a grand jury by reason of the unfitness of one or more of the grand jurors, and lays down the rule that courts will only interfere after indictment "where there has been a positive disqualification imposed by statute."

In the case of People v. Jewett, 3 Wend. 321—one of the cases referred to in the case last cited—the defendant was indicted for aiding in the abduction of William Morgan. It was objected to the indictment that one of the grand jurors had, before the finding

of the indictment, in repeated conversations, declared that the defendant was guilty of aiding in the carrying off of Morgan; that he was guilty of the crime, and ought to be punished therefor. The defendant did not know that any charge would be made against him before the grand jury. The court, while admitting the force of the argument that the defendant should be allowed an exception to a partial grand juror, overruled the objection "from the consideration of the great delays and embarrassments which would attend the administration of criminal justice" if the course proposed was allowed.

In Munroe v. Brigham, 19 Pick. 368, also cited in the Reeves Case, Chief Justice Shaw remarks:

"Upon general grounds, unless presumptively required by statute, it would be inconsistent with the purposes of justice to allow such an exception to a juror. * * * Where no other incapacity exists, and no injustice is done, nothing but a positive rule of law would seem to require that a verdict should on that account be set aside."

The case of United States v. Benson and others (C. C.) 31 Fed. 896, involved questions identical with those in this case. The opinion of the court is by the late Justice Field, with whom were associated in the trial of the case Circuit Judge Sawyer and District Judge Hoffman. The defendants were indicted for an alleged conspiracy to defraud the United States. Each interposed a plea in abatement upon the ground that the names of some of the grand jurors who found the indictment were not on the assessment roll. The laws of California, where the case arose, prescribe among other qualifications for a juror that he shall be "assessed on the last assessment roll of his county on property belonging to him." The California Penal Code provides that challenges to an individual grand juror may be interposed for one or more of the certain enumerated causes only. The causes of challenge so enumerated do not include the objection that the juror was not assessed, etc. The California law further provides that an indictment may be set aside on motion when, among other things, "the defendant had not been held to answer before the finding of the indictment, on any ground which would have been a good ground for challenge either to the panel or to any individual grand juror." The court held that the provision disqualifying persons to serve on juries, whose names were not on the assessment roll, did not apply to grand jurors, because it was not included in the only grounds of challenge which the law permitted to be made to such jurors, and, unless it was a ground of challenge, it could not be a ground for setting aside an indictment under the section of the Penal Code relating to that subject.

The effect, then, of the statute prescribing the grounds upon which an indictment may be set aside, is to limit the disqualification of grand jurors to such grounds. Now, the Oregon statute does not permit pleas in abatement to indictments upon any ground. It provides for setting an indictment aside upon motion upon certain specified grounds, and the grounds so specified do not include any of those upon which the pleas in abatement are based

in this case. So, in the Benson Case, a positive disqualification of "jurors" imposed by statute was not available to a defendant in a proceeding like this, the statute not having made it a ground upon which to set aside the indictment, while in this case there is neither a positive disqualification by statute, nor a ground urged upon which the statute permits the indictment to be set aside In the Benson Case the court goes on to state a further fatal objection to the plea, as follows:

"In this case the objections to some of the grand jurors, that their names were not among the list of taxpayers on the last assessment roll of their respective counties, is technical only. There is no allegation in the plea that the jurors were not in all respects, as to ability and knowledge, fully qualified for the duties imposed upon them, or that the defendants were in any respect prejudiced by the absence of their names from the assessment roll. In these circumstances, the objection must fall under the general rule of the federal courts that omissions which do not impair any substantial right or prejudice the defense of the accused must be disregarded, unless otherwise required by positive statute. Section 1025, Rev. St. [U. S. Comp. St. 1901, p. 720], declares that 'no indictment found and presented by a grand jury in any district or circuit or other court of the United States shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon be affected, by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant.'"

In this case, as in that, the particular objection, as well as the other objections urged, with the possible exception of that which relates to the citizenship of Guistin, are of the character mentioned in the above quotation; and, although the objections in question are answered in this statement of the law, nevertheless I shall briefly consider them upon the facts stated.

It is alleged that the grand jury was not regularly organized or impaneled at the time the indictment was returned, but was an irregular "and void" grand jury, in this:

"That on the 18th day of October, 1904, said grand jury was impaneled and organized, consisting of 21 persons including, among others, W. E. Robertson and Carl Phelps; and the said grand jurors were sworn, and said W. E. Robertson appointed foreman. That said Carl Phelps and W. E. Robertson were qualified and lawful jurors to sit as grand jurors in said court and had each and all of the qualifications required by law, and that said grand jury retired and commenced their investigation. That thereafter, and on the 19th day of October, 1904, said Robertson was excused for the term without cause. That nevertheless said grand jury continued to perform their duties and to investigate cases before them until the 25th day of October, 1904, when one George Peebler, who had never been a member thereof, was added to said grand jury by an order of this honorable court, and was impaneled and sworn as a grand juror, and took his seat with said grand jurors, and from that time, up to and including the finding of this indictment, acted with said jurors, and took part, as such pretended grand juror, in the finding of the indictment in this case. That thereafter the said pretended grand jury continued to transact business as such grand jury, and to investigate charges against divers and sundry persons, and, among the rest, as this defendant believes and alleges, partially investigated the charge against this defendant, upon which this indictment is brought, and heard testimony therein until about the 19th day of December, 1904, when one Fred G. Buffum, who was not one of the grand jurors originally impaneled, and who had not acted with said grand jury up to that time was, by order of this court, added to said pretended grand jury, and impaneled and sworn as one of said grand jurors, and that he continued to act with said grand jurors

as one of said grand jury up to the time that this indictment was returned into court, and took part in the investigation of this charge (which had then been partially investigated by the grand jury) from that time up to the finding of this indictment, and voted upon the finding thereof. That thereafter, and on the 27th day of January. 1905, and before this indictment was voted or returned into court, the aforesaid Carl .Phelps was excused from such grand jury by order of this court, although he had been taking part in the investigation of this charge and had heard the testimony therein, and that he never thereafter acted as such grand juror—all to the substantial prejudice of this defendant."

Upon the argument the objection relating to the discharge of Robertson was waived by the attorneys for the defendant, and doubts were expressed by them as to the validity of the objection relating to the discharge of the juror Carl Phelps. The record shows that these jurors were discharged "for good cause shown to the court." Since there was necessarily an affirmative vote of 12 jurors to find a bill, the absence of these jurors could not have affected the result. It was suggested that they might, if present, have influenced a change in the affirmative vote by persuasion, but it goes without saying that there is no presumption against the indictment that these jurors would have endeavored to exert such influence, or would have succeeded in so doing; and, before the court can consider any objections made, it must at least appear, not from the belief expressed, but from the facts stated, that the defendant has suffered some impairment of a substantial right or some prejudice, or that the things complained of violate the requirements of a positive statute. Moreover, the power of the court to discharge a juror for good cause shown is undoubted, and the possible or probable effect of the absence of such a juror on the subsequent proceedings of the grand jury does not admit of inquiry. In the language of the court in United States v. Belvin (C. C.) 46 Fed. 383 : "That the court may, in its discretion, excuse the foreman or any member of the grand jury from further service, without invalidating the jury, is too obvious to need demonstration." The cases are so numerous and uniform in support of this authority that further citations are needless. "Whether," as stated in State v. Ward, 60 Vt. 142, 14 Atl. 187, this right "comes to us as a part of the common law," "need not be determined. It has been the recognized right of the court, as practiced, so far as revealed by the reported decisions, and so far as the memory of the oldest practitioners can inform us, for nearly a century." And it is equally well established that the legality of the excuse for which a grand juror was discharged will be presumed, and, if the record recites that good cause was shown to the court, the presumption will be conclusive, as the record cannot be contradicted by oral testimony. Ter. v. Barth (Ariz.) 15 Pac. 673; Wallis v. State, 54 Ark. 611, 16 S. W. 821; Williams v. State, 69 Ga. 12; Burrell v. State, 129 Ind. 290, 28 N. E. 699; State v. Brown, 12 Minn. 538 (Gil. 448); Cotton v. State, 31 Miss. 504; Epperson v. State, 5 Lea (Tenn.) 293.

The record of the court shows that the jurors Peebler and Buffum were summoned at the same time with the other jurors. It also contradicts the allegation of the plea that the grand jury had "par-

tially investigated" the charges upon which this indictment was found before these jurors were sworn in. The record shows that on October 25, 1904, Peebler was sworn in; that the grand jury on that day reported to the court that it had "completed all business brought to its attention," and that it was therefore excused until such time as it should be reconvened by order of the court; that thereafter, and on December 19, 1904, the grand jury was reconvened; and that, so being, Buffum was duly sworn in, after which the grand jury retired. So that the grand jury, having on October 25th, after Peebler was sworn in, "completed all business brought to its attention," began on December 19th the consideration of matters not theretofore brought to its attention; Buffum being sworn, and retiring from the courtroom, with the other jurors, for that purpose. The indictment in question was returned on the 1st day of the following February. Phelps was excused on the 27th of January. With the exception of Phelps, the personnel of the grand jury was not changed during the period covered by its investigation of the charge in question, nor thereafter up to the time of its final discharge. These facts do not admit of contradiction. United States v. Terry (D. C.) 39 Fed. 358. They are shown by the record, and they are within the knowledge of the court.

A grand juror who reports after the jury have been sworn and charged may or may not be sworn, in the discretion of the court, when there are enough grand jurors without him. Findley v. People, 1 Mich. 234; People v. Lauder (Mich.) 46 N. W. 964. In the latter case the court says that it has been very usual, when delinquent jurors have come in on the same day after the jury have been impaneled, sworn, and charged, to have them sworn and sent to their fellows. "If," says the court, "it may be done that day, then it may be done any time during the session of the grand jury. It is a matter entirely within the discretion of the court, and circumstances such as the absence of a part of those impaneled, from sickness or other cause, might make its exercise very proper."

The summons in this case was for 30 jurors, and it is suggested, rather than argued, that this fact may operate to invalidate the grand jury. Experience has shown that it is necessary, and it has therefore become the practice in this court, to issue the venire for a greater number than the maximum required, inasmuch as not all of those summoned will be found, and among those found some will be entitled to exemption, and others will be disqualified, through sickness or otherwise, for jury service. In the present case, of those summoned, 19, not including Robertson, who was exempt, reported for duty. This number was afterwards increased, by the presence of Peebler and Buffum, to 21. If the venire had been only for the maximum number required, it is doubtful if a quorum could have been had at the time appointed for the organization of the grand jury. The practice which has resulted in the particular complaint is founded in necessity, and I have no doubt of its legality and propriety. It is immaterial, and does not affect the legality of the grand jury, if more than 24 persons are summoned to appear as jurors. Stevenson v. State, 69 Ga. 68; Turner v. State, 78 Ga.

177; People v. Harriot, 3 Parker, Cr. R. 112; State v. Watson, 104 N. C. 735, 10 S. E. 705; Lowrance v. State, 4 Yerg. (Tenn.) 147.

The ground of the fourth plea is that Francis J. Heney is not a permanent resident of this district, but resides in the state of California, and that because of such nonresidence he could not lawfully act as district attorney. The principle is settled that there is a presumption from the undisturbed exercise of a public office that the appointment to it is valid. In the present case it is not questioned that the court had authority to make a valid appointment to this office, and that it did appoint Mr. Heney, and that during the performance by him, as district attorney, of all the acts and things complained of, he was in the undisturbed and unquestioned exercise of that office. His right to the office cannot be attacked collaterally. Whether he is in fact ineligible to hold the office is not material to the purposes of this inquiry. He is a de facto officer, and is entitled to continue in the office until it is judicially declared by a competent tribunal, in a proceeding for that purpose, that he has no right to it. 8 Ency. of Law, 788, citing a large number of cases. In the case of In re Manning, 139 U. S. 504, 11 Sup. Ct. 624, 35 L. Ed. 264, a conviction is upheld which was had in a trial before a de facto judge of a court de jure. The case was from Wisconsin, where the rule is recognized in a long series of decisions that "if the office has been lawfully established and a person exercises the functions thereof by color of right, but whose election or appointment thereto is illegal, his official acts therein cannot be successfully attacked in collateral proceedings, but in all such proceedings will be valid and binding until the officer is ousted by the judgment of a court in a direct proceeding to try his title to the office." The rule is required by public policy. As stated by Justice Story in the Bank of United States v. Danbridge, 12 Wheat. 64, 6 L. Ed. 552: For the purpose of "upholding transactions intimately connected with the public peace and the security of private property," the law indulges in its own presumptions; "thus it will presume that a man acting in a public office has been rightfully appointed; that entries made in public books have been made by the proper officer," etc.

As to the other grounds of objection to the indictment—that Mr. Heney has been very prejudiced against the defendant, and very active in working up feeling against him, and has been very vindictive and bitter in his prosecution of this charge—these are matters of which this court cannot take cognizance. A prosecuting officer may not infrequently appear active against a defendant, and bitter and vindictive, in and out of court. The feelings and interests of a defendant tend to create in him an unfavorable opinion respecting the attitude of the prosecuting officer towards him. What is alleged is a mere matter of opinion, and as to the effect of the conduct attributed to the district attorney by that opinion, no opinion is expressed; and, if there was in fact evidence of the facts to which the opinion relates, it could not affect the legality of what has been done, or afford ground for setting the indictment aside. The officer may, as alleged, have "greatly influenced the grand jury

to find this indictment." It is not stated how this influence was produced—whether by the production of evidence before them, and pertinent suggestion respecting it, or otherwise. It is stated that, "if said Francis J. Heney had not so unlawfully appeared" before the grand jury, this indictment would not have been found. All this cannot be other than mere opinion. If he had "lawfully" appeared before them, the presumption is that the same result would have followed. In other words, Mr. Heney's influence with the grand jury cannot possibly be said to have been affected by his residence, and that is the ground of his alleged disqualification to hold the office. All these matters, and those which relate to his alleged presence while the grand jury was deliberating—to his arguments, denunciations, intimidations, etc.—are indefinite and vague. The district attorney may explain both his case and his law to the jury. United States v. Cobban (C. C.) 127 Fed. 713. If he went beyond this, his acts may constitute an irregularity; but the case must be extreme before the court will try the district attorney or the grand jury, or both, in order to determine whether it will try a defendant. Instead of conclusions and opinions, there must be something tangible, justifying a presumption of injury to the defendant in a substantial right, before the court will interfere; assuming that it ought to do so upon any state of facts of the character indicated.

Similar questions to those presented upon this ground of the plea were considered by Judge Deady in United States v. Brown, 1 Sawy. 533, Fed. Cas. No. 14,671, and in that case the court said:

"Neither the motion to set aside nor the motion to quash will lie where the objection does not appear or arise upon the face of the indictment, or perhaps the records of the court. This being so, the affidavits of the defendants impugning the conduct and judgment of the grand jury cannot be considered upon the hearing of this motion. If the contrary practice were established, there would be no need of grand juries, and the court would necessarily assume both the function of indicting and trying criminals, for it is safe to presume that in most cases the defendant would object to being tried upon the indictment, and support such objection by his affidavit that he believed the grand jury acted upon incompetent or insufficient evidence. The wit of man could not devise a mode of indicting which would not be liable to this objection from the defendant."

It remains to be considered whether the organization of the grand jury and the legality of its proceedings can be attacked on the grounds alleged, as a matter of legal right.

Section 800 of the Revised Statutes [U. S. Comp. St. 1901, p. 623] provides that jurors in the United States courts shall have the same qualifications as jurors of the highest courts of law in the state where the court is held, and they shall be designated by ballot, lot, or otherwise, according to the mode of forming such juries then practiced in such state court, so far as such mode may be practicable, by the courts of the United States, and for this purpose the courts of the United States may by rule or order conform the designation and impaneling of juries, in substance, to the laws and usages relating to jurors in the state courts. This section is the act of 1840 (chapter 47, 5 Stat. 394), with some

amendments not important in this connection. No express rule or order has been adopted in this court, conforming the designation and impaneling of juries to the laws and usages of the state courts, although this court has conformed its practice in that respect to state laws and usages since its organization. It is not left, however, to the discretion of the United States courts, to conform their practice respecting the organization of juries to state laws. The requirements of the act of 1840 (section 800) are imperative: "And they [juries] shall be designated," etc., "according to the mode of forming such juries" in the state courts. In the case of United States v. Reed, 2 Blatchf. 435, Fed. Cas. No. 16,134, tried in the Northern District of New York before Justice Nelson and District Judge Hall, it was held that the state law which abolished challenge to the grand jury panel, and limited the objection that might be made to any particular juror, applied in the federal courts sitting in New York. Nelson, J., delivering the opinion of the court, after explaining the reasons for allowing the challenge to the array at common law, said:

"So that, in point of law, as well as in truth, both the challenge to the favor and the challenge to the array, directly or indirectly, in each case, go to the determination of the proper qualifications of grand jurors, either as individuals or as a panel. And if we are right in our premises, it follows that the two sections in question are directly within the act of Congress of 1840, and are applicable in regulating the selection, summoning, returning, and organization of grand juries in the federal courts."

The court goes on to say that, although challenges have been abolished, it by no means follows that the accused has no remedy in a case where there has been any improper conduct or fraud committed by the public officers in drawing, summoning, or organizing the grand jury. Such proceedings are always under the general supervision of the court. "The court has general power to preserve the pure administration of justice, and its sound discretion will always be exercised freely for the purpose of securing that end."

The Reed Case is approved and followed in United States v. Tallman, 10 Blatchf. 21, Fed. Cas. No. 16,429. The court held that the state statute having been adopted by the federal statute; and, the state statute having taken away the right of challenging the array, it had the effect, by implication, of taking away the right to raise objection in any form in the United States court.

The case of United States v. Tuska, 14 Blatchf. 5, Fed. Cas. No. 16,550, adopts the rule of the foregoing cases. There was a plea in abatement averring that one of the grand jurors was a non-resident. The court, after stating that the case is covered by the decision in the Reed Case, goes on to say:

"If, in every criminal prosecution, the accused has the legal right, by a plea in abatement, to raise the question of the residence and the property of each of the members of the grand jury, and require that issue to be tried before a jury, before calling upon him to answer the charge, it is easy to see that, in localities like New York, the practice would substantially render the trial of an offender optional with him, for, in the absence of any better method of selecting juries for courts of the United States than that permitted by

exising laws, it doubtless happens that some one of the grand jury is open to question as to his residence or property."

In the case of United States v. Eagan, supra, which was tried before Justice Brewer and Circuit Judge Thayer, the court considered the effect of sections 722 and 800 [U. S. Comp. St. 1901, pp. 582, 623] with reference to the question under consideration. Mr. Justice Brewer, quoting that portion of section 800 which provides that jurors to serve in the courts of the United States, in each state, respectively, shall have the same qualifications and be entitled to the same exemptions as jurors of the highest court of law in the state, says:

"Mr. Conkling, in his treatise on the Practice of the United States Courts, insists that there are cogent reasons for holding that this refers not merely to the mere qualifications as to citizenship, age, residence, etc., but that it extends to all the proceedings for challenging and determining the qualifications of jurors, and to that extent incorporates the laws of the state. Clearly, with these two sections [800, 722] of the federal statute, we have the right, if we are not bound in every case in which there is no express provision of the federal statute, to apply the provisions and the laws of the state in which the court is held; and, applying the laws of Missouri, there can be no question but that this plea in abatement must be overruled."

Judge Thayer, commenting upon the case, stated it as his opinion that under section 722 the court was authorized to conform its rulings to the practice which obtains in the state courts of Missouri, and that, under the practice in the state courts, it was clear, beyond question, that the plea in abatement stated no valid ground of objection to the indictment.

Section 722, referred to in the foregoing opinions, provides, in effect, that the jurisdiction in civil and criminal matters conferred on the Circuit and District Courts by the provisions of title 13 and of title "Civil Rights" and of title "Crimes," for the protection of all persons in the United States in their civil rights and for their vindication, shall be exercised and enforced in conformity with the laws of the United States. But when the laws of the United States are not suitable, "or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed" by the Constitution and laws of the state, shall govern, etc. The defendant upon this hearing contended that the operation of this section was limited to offenses under what is known as the "Civil Rights Act," and that the phrase "civil rights," employed in the section, means only such rights as are provided for in that act. But there is no ambiguity whatever in the provision, and there can be no question as to its general application.

In the case of United States v. Cline (D. C.) 62 Fed. 798, Judge Ross held that, there being no provision of the United States statutes regulating challenges to grand jurors, it is proper for the federal court to follow the practice of the courts of the state in which it is held, with reference to such challenges.

In the case of Crowley v. United States, 194 U. S. 461, 24 Sup. Ct. 731, 48 L. Ed. 1075, the court held that it was the duty of the

court in Porto Rico to recognize any valid existing local statute relating to the qualifications of jurors. By the local law, challenges were allowed to jurors for the disqualification relied upon in the plea. The question as to whether the objection allowed by the local law to jurors, and by it made a ground of challenge, could be taken by plea in abatement after the return of the indictment, is not, in Porto Rico, controlled by any statute; and the court, therefore, upon "principles of general law," sustained the plea, stating in its opinion that the authorities are not in harmony as to the general law.

In the case of United States v. Benson, supra, Justice Field, applying the local law, refused to set an indictment aside when the name of a grand juror did not appear on the last preceding assessment roll. This was a disqualification under the statute, but not a ground of challenge. The court, referring to the state law, said:

"Turning to the causes for which a challenge to the panel, or to an individual grand juror, may be interposed, we find none which embraces the objection taken by the plea in abatement."

I believe there is no case where an objection to an indictment in a federal court has been sustained when the mode employed to present the objection was contrary to the provisions of the local law.

Section 1269 of the Oregon code provides that no challenge shall be made or allowed to the panel from which the grand jury is drawn, nor to an individual grand juror, unless when made by the court for want of qualification as prescribed in section 1268. Section 1268 provides that, before accepting a person drawn as a grand juror, the court must be satisfied that such person is duly qualified to act as such juror, but that, when drawn and found qualified, he must be accepted, unless he is excused by the court, etc. The only plea in addition to the pleas of guilty and not guilty allowed by the statute is the plea of former conviction or acquittal, and there are only two grounds upon which an indictment can be set aside on motion, and neither of these is included in the pleas in question. Section 1349 provides that:

"The indictment must be set aside by the court upon the motion of the defendant in either of the following cases: (1) When it is not found indorsed and presented as prescribed in chapter 7 of title 18 of this Code; (2) when the names of the witnesses examined before the grand jury are not inserted at the foot of the indictment or indorsed thereon."

There is no other provision for setting an indictment aside, and the express mention of this mode is, of course, the exclusion of any other.

In State v. Whitney, 7 Or. 388, it was held, that, when a person other than the district attorney appeared before the grand jury and examined witnesses, this was not a ground for setting an indictment aside, inasmuch as it was not within either of the only two cases upon which such action could be taken.

In State v. Carlson, 39 Or. 26, 62 Pac. 1016, 1119, it is decided by the Supreme Court of Oregon that challenges to the panel and

to individual grand jurors are abolished in this state (it was previously so held in State v. Fitzhugh, 2 Or. 227); that the statute, in effect, interposes a challenge to each grand juror drawn; that the court, in impaneling the grand jury, is presumed to have determined the question of each grand juror's qualifications; and that such determination is conclusive, and is not subject to appeal.

I have not referred to all the cases that support the views contained in this opinion. Those referred to are, in my opinion, conclusive of the questions considered. The rule by which the procedure in the federal courts relating to the organization of grand juries and objections to indictments is made to conform to the local law is too firmly established to admit of question at this late day. It has existed in this court since its organization, with the establishment of the state government, without objection until the present time. And the state court procedure has remained without material change since its adoption, more than 40 years ago, notwithstanding the facility with which laws are amended in the state. It may be safely assumed that it has not been productive of injustice or wrong, and it can never so operate while courts have, in the general supervision and control of their proceedings, power to preserve the pure administration of justice.

It follows from these considerations that all objections to an indictment not provided for as hereinbefore set forth must be addressed to the court, for the exercise of its discretion; and when it is made to appear that there has been fraud practiced, or other acts committed, that impairs a defendant's substantial right, the court, in the exercise of a sound discretion, will grant appropriate relief.

The objections to the several pleas are sustained, and said pleas are ordered dismissed, except as to the plea by which the objection to George Guistin on the ground of alienage is made. The facts alleged in that case constitute a positive disqualification by the state law, and while, under the state court rule, which is a rule of procedure in this court, the objection to this juror cannot now be made, yet, in view of the statement of the district attorney, made on the hearing, that, if the court should decide adversely to the defendant, yet, out of abundant caution, he desired to meet this objection upon the facts, I will afford him the opportunity to do so. This he may do by filing the affidavits offered on the hearing, or by testimony in open court, with the right, of course, on the part of the defendant, to file counter affidavits or to introduce testimony to meet that produced by the government.

As to the other affidavits offered, inasmuch as they cannot, in the view I have taken of the case, prejudice the defendant, and the court on appeal may reach a different conclusion respecting their admissibility from that reached by me, the district attorney has leave to file them if he desires to do so.